Mark J. Solowicz, Jesse E. Soltis and Stephen J. Havey, Plaintiffs-Appellants-Petitioners,

v.

Forward Geneva National, LLC, Geneva National Trust, Geneva National Sales Center, LLC, Geneva National Retail Corp., Geneva National Community Assoc., Inc., Geneva National Condominium Master Assoc., Inc., Geneva Woods, Inc., Harlow GN, LLC, Lowell Management Services, Inc., GN Storage II, LLC, Lowell Properties, LLC, Geneva National Community Services, LLC, Geneva National Development Corp., Foxwood at Geneva National, LLC, Bayside Pointe Land Development, LLC and Paloma Geneva National, LLC, Defendants-Respondents.

Supreme Court

*No. 2008AP10. Oral argument September 18, 2009.*
*—Decided March 24, 2010.*

2010 WI 20

(Also reported in 780 N.W.2d 111.)

557

For the plaintiffs-appellants-petitioners there were briefs by *Martin J. Greenberg, Brad L. F. Hoeschen, Jordana Thomadsen, Jill Draeger,* and *Greenberg & Hoeschen, LLC,* Madison, and oral argument by *Brad L. F. Hoeschen.*

For the defendants-respondents there was a brief by *John P. Brady, Bryan W. Edgar,* and *Weiss Berzowski Brady LLP,* Delafield, and oral argument by *John P. Brady.*

An amicus curiae brief was filed by *J. Bushnell Nielsen, Rebecca Leair,* and *Reinhart Boerner Van Deuren S.C.,* Delafield, on behalf of the Wisconsin REALTORS® Association, and oral argument by *J. Bushnell Nielsen.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's decision[2] granting summary judgment in favor of Forward Geneva National, LLC, and other defendants (collectively, the Developer) and denying plaintiffs' motion for summary judgment. Both the circuit court and the court of appeals agreed that the "Declaration of Covenants, Conditions, Restrictions and Easements for the Geneva National Community" (the Community Declaration), which controls the overall development of Geneva National, does not violate Wis.

---

[1] *Solowicz v. Forward Geneva Nat'l,* 2009 WI App 9, 316 Wis. 2d 211, 763 N.W.2d 828.

[2] The Honorable Michael S. Gibbs of Walworth County presided.

Stat. ch. 703 (2007–08),[3] the Condominium Ownership Act. The court of appeals concluded that the Community Declaration established a master-planned community[4] that is not subject to ch. 703 and that the terms of the Community Declaration are unambiguous, which "the complainants full-well knew existed" before they purchased in Geneva National.[5]

¶ 2. Two issues are presented for our review: (1) whether the Community Declaration, which affects the condominiums, is either subject to or contravenes Wis. Stat. ch. 703, the Condominium Ownership Act; and (2) whether the Community Declaration's terms, if unambiguous, must also be reasonable to be enforceable. We conclude that ch. 703 does not apply to the Community Declaration because the Community Declaration is not a document that creates condominiums. Rather, the Community Declaration provides the over-

---

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[4] The court of appeals referred to Geneva National as a "master-planned community." *Solowicz*, 316 Wis. 2d 211, ¶ 23. We have not employed this term, but rather, refer to Geneva National simply as a 1,600 acre planned community. We have done so because, to some extent, the term "master planned community" may have become a term of art in those writings that remark upon the Uniform Common Interest Ownership Act (UCIOA). In the UCIOA, "master planned community" is the term employed for developments of more than 500 acres, with at least 500 units, all of which the developer has subjected to an overarching development plan. UCIOA § 2–123 (2008). Although Geneva National has similarities to a master-planned community as defined in the UCIOA, Wisconsin has not enacted a statute adopting the UCIOA. In addition, we have not analyzed the UCIOA to determine whether Geneva National complies with all its provisions.

[5] *Solowicz*, 316 Wis. 2d 211, ¶ 1.

arching development scheme for Geneva National, a 1,600 acre planned community. Moreover, the Community Declaration does not contravene the protections of ch. 703 because the Developer does not exercise particularized day-to-day control over individual condominiums; rather, particularized day-to-day control of the terms of individual condominiums is vested in the unit owners. Furthermore, because the terms of the Community Declaration are unambiguous, those terms are not required to be reasonable, as well as unambiguous, in order to be enforceable. Accordingly, we affirm the decision of the court of appeals that affirmed the circuit court's decision granting the Developer's motion for summary judgment and denying plaintiffs' motion for summary judgment.

## I. BACKGROUND

¶ 3. The relevant facts are undisputed. Plaintiffs Mark J. Solowicz, Jesse E. Soltis and Stephen J. Havey (collectively, Solowicz) each purchased a condominium unit in Geneva National, a planned community near Lake Geneva, Wisconsin. Geneva National was designed by "environmental specialists and engineers to protect the beauty of the environment" while offering year round amenities and services to its residents and to those who visit Geneva National.[6] The community spans approximately 1,600 acres and consists of three golf courses, racquet and swim clubs, numerous wooded hiking trails, hotels, restaurants, private roadways and utilities, single- and multi-family residences and commercial space. Geneva National was first developed by GN Partners, an Illinois General Partnership. Forward Geneva National, LLC is GN Partners' successor in interest as the Developer.

---

[6] www.genevanationalhoa.com, visited March 12, 2010.

¶ 4. The multi-family residential buildings include 32 parcels of condominiums.[7] Each condominium parcel, including the three condominium units purchased by plaintiffs, has two recorded declarations that apply to it: the "Declaration of Condominium Ownership and of Easements, Restrictions, Conditions and Covenants for Geneva National Condominium No. __" (with the particular condominium unit number indicated) (the Condominium Declaration) and the Community Declaration. The Community Declaration was recorded in the Walworth County Register of Deeds Office on May 21, 1990, and each of the Condominium Declarations, all dated May 22, 1990, were recorded sometime thereafter.

## A. Condominium Declaration

¶ 5. The Condominium Declaration for each parcel subjects that condominium parcel and the condominium units within that parcel to the provisions of the Condominium Ownership Act. Each Condominium Declaration required the Declarant to form the Geneva National Condominium Master Association, Inc. (Condominium Master Association), pursuant to Wis. Stat. § 703.155, not later than the date of the first conveyance of a condominium unit to a purchaser. The Declarant properly formed the Condominium Master Association. This association serves all residential and select commercial condominiums at Geneva National. The Developer has no control over the Condominium

---

[7] The condominium parcels are separated into distinct neighborhoods that vary in size and architectural style. For example, The Turn at Geneva National includes two models—The Tuscany and The Meadow—and Foxwood at Geneva National spans 65 acres and is platted for 106 single-family condominium units. http://gnbuilders.com/prefbuild.html.

Master Association; complete control is vested in its members—the condominium unit owners. The Condominium Master Association conducts the affairs of the condominium parcels. Its services are limited to maintenance and administration.

## B. Community Declaration

¶ 6. The Community Declaration is not simply a restrictive covenant as the document has been referred to by petitioners and in both previous court decisions. Rather, it is a master governance scheme for the entire Geneva National development. The document was enacted by the Declarant, whom we also refer to as the Developer, Forward Geneva National, LLC.[8] The circuit court determined the Community Declaration's purpose is to promote the orderly development of Geneva National; to control the effect of the development to preserve the natural setting; to maintain wooded areas, open spaces, recreational areas, roadways and other facilities and to subject the development to the terms of the Community Declaration for its overall benefit. This is accomplished through two governing bodies: the Geneva National Trust (Trust) and the Geneva National Community Association (Community Association).

¶ 7. The purpose of the Trust is to preserve and maintain the natural environment within Geneva National. The Trust's powers and duties include adopting and enforcing architectural standards, adopting and amending rules and regulations governing the use of property and granting variances from restrictions set

---

[8] GN Partners was the original Declarant, as well as the original developer. Forward Geneva National, LLC is its successor in interest in both capacities.

forth in the Community Declaration. The Trust is governed by majority vote of three trustees. If the Trust is unable, fails or refuses to act according to its duties, only then can the Declarant exercise the Trust's powers. The Trust is independent of, and not accountable to, the Community Association.

¶ 8. The Community Association has various powers, duties and responsibilities. It maintains Geneva National's private roadways, medians, entrances and property; provides utilities and security services; may levy assessments on property owners; may buy or sell property on behalf of the members; may obtain loans and may take any other lawful action necessary in the sole and absolute discretion of the Board of Directors to exercise all powers and discharge all duties and responsibilities of the Community Association and to carry out the purpose and intent of the Community Declaration. Its powers are limited to the extent that it cannot exercise the powers granted to the Trust. The Community Association is governed by the majority vote of the Board of Directors. The Board of Directors is made up of five (originally six) classes of voting members: the club owners, commercial property owners, multiple-family unit owners, single-family unit owners and the Developer. Each class of voting members elects a representative to sit on the Board of Directors, and each representative may cast four votes, except the commercial property owners who may cast only three votes.

¶ 9. Article IX of the Community Declaration reserves certain rights for the Declarant, two of which are at issue here. The Declarant may amend the Community Declaration without approval of any condominium unit owner if the Declarant determines that the amendment does not materially alter or change any

unit owner's right to the use and enjoyment of his or her property. Additionally, the Declarant may exercise the powers listed in Article IX until:

> conveyance by Declarant of eighty-five percent (85%) of the maximum number of Units which may be located on Single-Family Residence Grounds and Multiple-Family Residence Grounds within the Property, as determined from time to time pursuant to the provisions of the applicable zoning laws and ordinances, including any variations, use permits, amendments and other modifications thereto enacted by Walworth County, Wisconsin or any other governmental unit or agency having jurisdiction thereof . . . .

The maximum number of residential units is 1,960. As of April 2007, the Declarant conveyed 1,015 units, approximately 52 percent of the maximum number. No other term exists for the transition of Declarant control to the property owners.

¶ 10. Solowicz sued for declaratory judgment. Solowicz's major complaint is that the Developer, referred to as the "Declarant" in the Community Declaration, retains too much control over the development of Geneva National.[9] In an effort to limit the Developer's control, Solowicz sought a declaration that Wis. Stat. ch. 703 applies to the Community Declaration, that the Community Declaration be deemed invalid for violating ch. 703 and that the Developer relinquish control of Geneva National to the property owners. Solowicz further argued that even if the Community Declaration is not subject to ch. 703, it is invalid because its terms

---

[9] For example, Solowicz complains that the Developer purchased an expensive gate for the entrance to the community and then assessed all the owners for that purchase.

are unreasonable, ambiguous and vague. The parties filed cross-motions for summary judgment.

¶ 11. The circuit court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. Finding no genuine issue of material fact, the circuit court held that the Community Declaration is not a condominium instrument and thus is not subject to ch. 703 and that it does not contravene ch. 703 because each individual Condominium Declaration is subject to ch. 703 and thus provides plaintiffs the protections of the law with regard to the particular parcel in which their individual units are located. The circuit court further held that the Community Declaration's terms were not ambiguous or vague. Finally, the court held that it was precluded from assessing reasonableness because the Community Declaration's language is unambiguous. The court of appeals affirmed the circuit court's decision and, in addition to the reasons set forth by the circuit court, explained that the Community Declaration established a 1,600 acre planned community that is not subject to ch. 703.

¶ 12. We granted review and now affirm.

## II. DISCUSSION

### A. Standard of Review

¶ 13. This case requires us to review the circuit court's decision granting the Developer's motion for summary judgment. We review a decision on a motion for summary judgment independently, employing the same methodology as the circuit court. *Estate of Genrich v. OHIC Ins. Co.*, 2009 WI 67, ¶ 10, 318 Wis. 2d

553, 769 N.W.2d 481. Resolution of the first question presented requires us to interpret and apply Wis. Stat. ch. 703. " 'The interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently.' " *Id.* (quoting *McNeil v. Hansen,* 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273). Resolution of the second question presented requires us to interpret a written document affecting land and is a question of law that we review independently of the circuit court. *Zinda v. Krause,* 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995) (citing *Bubolz v. Dane County,* 159 Wis. 2d 284, 291–92, 464 N.W.2d 67 (Ct. App. 1990)).

B. Application of the Condominium Ownership Act

¶ 14. The first question is whether the Community Declaration, which established the terms and conditions for the development of a 1,600 acre planned community that includes condominium parcels, must comply with the Condominium Ownership Act (the Act). *See* Wis. Stat. ch. 703. Solowicz argues that the Community Declaration is a condominium instrument subject to the Condominium Ownership Act.

¶ 15. The condominium declaration is the operative instrument that creates a condominium. *See* Wis. Stat. § 703.09. Chapter 703 applies to all property with a duly executed condominium instrument. Solowicz argues that the Community Declaration is a condominium instrument as contemplated by the Act because the Developer attached the Community Declaration to the individual Condominium Declarations.[10] Therefore, Solowicz contends that ch. 703 overrides any contradic-

---

[10] We, like the circuit court and court of appeals, recognize that Solowicz bases his argument in part on an advisory

tory provisions in the Community Declaration. Specifically, Solowicz argues that because Article IX of the Community Declaration left the Declarant in control of Geneva National for 19 years, it violates Wis. Stat. § 703.15(2)(c).[11] Excising Article IX would result in control of Geneva National being transferred to the unit owners. Similarly, Solowicz argues that the Declarant violated § 703.09(2)[12] each of the four times it unilaterally amended the Community Declaration and that the provisions of the Community Declaration allowing such unilateral amendments should be excised. We disagree with Solowicz and decline to excise any provisions of the Community Declaration.

¶ 16. We conclude that the Community Declaration is not a condominium instrument subject to ch. 703; rather, it establishes an overall development scheme for the 1,600 acre planned community. Condominium instruments include the condominium declaration, plat and plan. *See* Wis. Stat. § 703.02(5). First, to qualify as a condominium declaration, the document "shall contain" "a statement of the owner's intent to subject the property to the condominium declaration"

---

memorandum issued by the Wisconsin Attorney General on July 21, 2006. The Memorandum concluded that the Community Declaration was in fact subject to Wis. Stat. ch. 703 and thus was probably not valid. Such opinions can be persuasive, but they are not binding on this court.

[11] Wisconsin Stat. § 703.15(2)(c) requires a declarant to relinquish control of a condominium association "[t]hirty days after the conveyance of 75% of the common element interest to purchasers," but not later than three years after the declaration is recorded or ten years in the case of an expandable condominium.

[12] Wisconsin Stat. § 703.09(2) provides: "[A] condominium declaration may be amended with the written consent of at least two-thirds" of the unit owners.

under the Act, a name including the word "condominium" and a description of the condominium's common elements.[13] Wis. Stat. § 703.09(1)(a), (b), (d). No part of the Community Declaration evinces the Declarant's intent to subject all 1,600 acres to ch. 703; rather, it is the Condominium Declaration for each condominium parcel that demonstrates the intent to be subject to the Act. Further, the Community Declaration's full name, "Declaration of Covenants, Conditions, Restrictions and Easements for the Geneva NationalCommunity," very clearly does not include the word condominium. The Community Declaration refers to condominiums only when it references the Condominium Declarations, which clearly include the word condominium in their title. Finally, each Condominium Declaration, not the Community Declaration, includes a description of the condominium's common elements. The Community Declaration is not, nor does it purport to be, a condominium plat. A condominium plat must include a survey of the condominium property. *See* Wis. Stat. § 703.11(2)(b). Such plat was properly included in each Condominium Declaration, not the Community Declaration. Lastly, the Community Declaration is not a condominium plan, which is required to be submitted as part of the plat. *See* § 703.11(2)(c). Again, each Condominium Declaration, not the Community Declaration, properly shows the location of the condominium units.

¶ 17. These shortcomings cannot be salvaged by the Act's saving provision in Wis. Stat. § 703.30(2) because the Community Declaration cannot be said to

---

[13] These are only three of the ten requirements necessary to create a condominium declaration, none of which is found in the Community Declaration. *See* Wis. Stat. § 703.09(1)(a)–(j).

"substantially conform with the requirements" of the Act. Thus, the plain language of ch. 703 makes clear that the Community Declaration is not a condominium instrument subject to the Act.

■

¶ 18. Solowicz further argues that Geneva National is required to comply with the Act because it is a community of condominiums and the Community Association is an umbrella organization authorized by Wis. Stat. § 703.155(7).[14] The Developer counters by arguing that Geneva National is not simply a community of condominiums, but a 1,600 acre planned community, portions of which contain condominiums.

¶ 19. We agree with the court of appeals' statement that planned communities, such as Geneva National, "are an entirely different type and level of development than condominiums." *Solowicz v. Forward Geneva Nat'l,* 2009 WI App 9, ¶ 23, 316 Wis. 2d 211, 763 N.W.2d 828. A condominium is a form of ownership of real property that combines two separate forms of ownership interest: the individual ownership of the dwelling unit and the undivided common ownership, with other unit owners, of the common elements of the condominium parcel. Joseph W. Boucher et al., *Wisconsin Condominium Law Handbook* § 1.17 (3d ed. 2006). While we found varying characteristics of similarly planned communities, there are several key components that appear to be common to most such commu-

---

[14] Section 703.155(7) provides: "A master association may represent condominium or noncondominium property on behalf of one or more condominiums and property under a different form of ownership or for the benefit of the unit owners of one or more condominiums and the owners of other property."

nities. First, these communities generally are large[15] developments that usually include a mix of commercial, recreational and residential property, including condominiums. Second, a keystone to such communities is an overall development scheme that not only permits individual units to operate under their own individual governing documents, but also subjects the entire development to a master governing body, which ensures the entire community is developed according to its stated purpose.[16] The communities function as semi-autonomous, private quasi-towns.

¶ 20. Geneva National is not merely a community of condominiums; rather, it is a 1,600 acre planned community that includes condominium parcels and other types of ownership. The Community Declaration, Geneva National's overarching development plan, guides the development of 1,600 acres according to the

[15] Section 2–123(a) of the UCIOA states that a community qualifies as a "master planned community if the declarant has reserved the development right to create at least [500] units . . . and at the time of the reservation that declarant owns or controls more than [500] acres on which the units may be built." (Brackets in original.)

[16] The circuit court relied on the Wisconsin Realtors Association's (WRA), appearing as amicus curiae, definition of a master-planned community, which encompassed the two key components described above. WRA described a master-planned community as one which:

> contemplates many parcels, each operating under a separate ownership regime such as a condominium declaration, but all subject to a master set of restrictions to give notice to buyers of the intended uses and use restrictions, amenities, and governance structure. Most often, the overall community has mixed uses, such as single-family residential, multi-family residential, commercial, and recreational. Each separate area requires different ownership, with a master association to govern the entire development.

Developer's vision—"a distinct golf and leisure community." *Solowicz,* 316 Wis. 2d 211, ¶ 24. It also serves to protect those who purchase within Geneva National by assuring that their common interest in developing such a community according to the overarching development plan will be honored as development continues. And finally, the recorded Community Declaration gives notice to all purchasers of Geneva National's underlying terms and conditions.

¶ 21. As did the court of appeals, we too conclude that Wis. Stat. "ch. 703 [] unambiguously provides no reference whatsoever to master-planned communities. So, the plain meaning of the chapter is that it simply does not contemplate such communities." *Id.,* ¶ 35. Accordingly, because the Community Declaration establishes the overall development scheme for the 1,600 acre planned community, it need not comply with ch. 703.

¶ 22. Furthermore, the portion of Geneva National that Solowicz seeks to control is not the 32 residential condominiums. The unit owners already have achieved this.[17] Instead, Solowicz seeks control of the remainder of the 1,600 acre development. Accepting Solowicz's argument would mean that simply because a developer chooses to include one condominium parcel in a 1,600 acre development, the time limitations of ch. 703—three or ten years—control the entire 1,600 acres. Thereafter, development decisions would cede to the then existing condominium unit owners. This surely cannot be the case. Due to the complexity of the development of the large planned community, extended developer control is necessary to properly market and uniformly develop such property. *See* Uniform Common Interest Ownership Act·§ 2–123(g) (2008).

---

[17] *See infra* ¶¶ 26, 29–30.

¶ 23. Likely anticipating the weakness of the arguments addressed above, Solowicz attempts to reinvent his argument by asserting that even if the Community Declaration is not a condominium instrument and ch. 703 does not directly apply to planned communities, the overarching development scheme of Geneva National intentionally contravenes the protections of ch. 703, to which plaintiffs are entitled. Solowicz cites three cases from other jurisdictions that he contends use condominium law to limit a developer's control over planned communities. All three of the cases cited are distinguishable on their facts, and one actually supports the Developer's position.

¶ 24. In *Fox v. Kings Grant Maintenance Ass'n*, 770 A.2d 707 (N.J. 2001), cited by Solowicz, plaintiffs were 46 condominium unit owners in a planned community[18] that spanned 1,800 acres with a total of 1,447 individually owned units. The condominium association was required to turn over control of the condominium's common elements to the community's umbrella association, which consisted of non-unit owners. The umbrella association then exercised complete control of "*all common property*," including common elements of the individual condominiums. *Id.* at 711 (emphasis in original). The court held that New Jersey's condominium act prohibited requiring unit owners to delegate their governance rights over the common elements of their condominium to the umbrella association. *Id.* at 709.

---

[18] The court in this case referred to the community as a planned-unit development, the description of which has similarities to a planned community with an overarching development scheme. *See Fox v. Kings Grant Maint. Ass'n*, 770 A.2d 707, 710 (N.J. 2001).

¶ 25. The *Fox* court went on to explain that an umbrella association is permitted to control "property intended for the common and beneficial use of unit owners of several separate condominium associations, such as common roadways, common open space, and common recreational facilities"; and, that, as long as the umbrella association does not infringe on the unit owner's control of the common elements of individual condominiums, the condominium act is not circumvented. *Id.* The court demonstrated support for other governance schemes by explaining that because of the enormity of such communities, control by an umbrella association is "necessary for the viability and maintenance of uniform standards." *Id.* at 719.

¶ 26. Here, the Community Association, which was established in the Community Declaration, functions appropriately under *Fox*'s description of a lawful umbrella association. It retains no control whatsoever over the Condominium Master Association,[19] which is the governing body that retains sole and complete control over the management and governance of the residential condominium parcels, including their common elements.[20] Stated otherwise, the Community Association's powers are limited to those *Fox* approved.

[19] The Condominium Master Association is controlled by its Executive Board, which is comprised of "one individual elected from each condominium." The Executive Board in turn elects five Executive Board members to the Executive Committee. It is this Executive Committee that has complete control over administering the affairs of the condominium property pursuant to the Condominium Declaration, the common elements of the condominiums and the annual budget and assessments imposed on unit owners.

[20] The common elements include internal roads, common area utilities, swimming pools, landscaping, etc.

Accordingly, *Fox* does not support Solowicz's argument that Geneva National's governance scheme contravenes ch. 703.

¶ 27. Solowicz next relies on *Brandon Farms Property Owners Ass'n v. Brandon Farms Condominium Ass'n,* 852 A.2d 132 (N.J. 2004), which held that under New Jersey's condominium act, a declaration may not make a condominium association responsible for an association member's failure to pay assessments owed to an umbrella association. *Id.* at 133–34. Geneva National's Community Declaration does not contain such a provision. To the contrary, the Community Declaration provides for the assessment of unit owners directly; it does not pass assessments through the Condominium Master Association as occurred in *Brandon Farms.*

¶ 28. Finally, Solowicz cites *Ainslie at Century Village Condominium Ass'n v. Levy,* 626 So. 2d 229 (Fla. Dist. Ct. App. 1993). In *Ainslie,* included in the condominium declaration was a long term lease and a service contract between the developer and a management firm that gave the developer control of the condominium's recreational facilities. *Id.* at 230. The court held the lease and contract void because it vitiated the statutory protections in place for condominium owners. *Id.* at 232. We agree with the court of appeals' analysis of *Ainslie* and conclude that it is distinguishable for two reasons. First, in the case now before us, there is no lease or contract giving the Developer control of any condominium parcel's common elements. Second, based on the *Ainslie* court's description, the development in *Ainslie* was a community of condominiums, not a planned community with an overarching development plan similar to Geneva National.

¶ 29. Significantly, all of Solowicz's complaints relate to how the community as a whole, through its overarching plan, is being developed. He has not complained that the Developer is meddling in individual condominium affairs. Indeed, this is because the Developer does not have any power over individual condominium affairs and therefore, its power cannot be said to thwart rights accorded to individual condominium unit owners under ch. 703.

¶ 30. In support of this point, we note that the Declarant timely ceded control of each residential condominium parcel to its unit owners as required under Wis. Stat. § 703.15.[21] Solowicz, Soltis and Havey, through the Condominium Master Association of which they are members, are in complete and absolute control of their condominium units and the common elements of their condominium parcels. Further, the Declarant has not amended the Condominium Declaration without proper approval of the unit owners, *see* Wis. Stat. § 703.09(2), and the Declarant is restrained from unilaterally amending the Community Declaration if such amendment would materially alter a unit owner's rights to the use and enjoyment of the unit and its common elements.[22]

---

[21] While the Declarant has the power to "approve" all amendments to condominium parcel documents under section 9.04 of the Community Declaration, the Declarant does not have the power to unilaterally amend condominium parcel documents, unless such amendment "is necessary" to cause the document to comply with "statute, ordinance, rule or regulation of any governmental or other regulatory authority, or with any judicial determination," as provided in section 11.01(b)(1) of the Community Declaration.

[22] *See* Community Declaration, section 11.01(a).

¶ 31. Because Geneva National is a planned community with an overarching development scheme established to create a high end golf and leisure community, containing restaurants, golf clubs, tennis clubs, swimming clubs, single family homes, multiple family homes, wooded hiking trails, private streets with gated access to the community, and not simply a community of condominiums, it is not subject to ch. 703. Furthermore, because the Community Declaration does not retain particularized day-to-day control over the condominium parcels or the individual condominiums, it does not contravene ch. 703.

## C. Solowicz's Reasonableness Requirement

¶ 32. Solowicz next contends that Wisconsin has a longstanding reasonableness requirement such that agreements with unreasonable terms, even if unambiguous, are unenforceable. The Developer contends that because the Community Declaration's terms are unambiguous, the court need not, and should not, determine the reasonableness of such terms. Accordingly, the second question we must address is whether the terms of the Community Declaration, if unambiguous, must also be reasonable. But, before we answer this question we must first determine whether the Community Declaration's terms are unambiguous. We consider each question in turn.

### 1. Unambiguous terms

¶ 33. We note that neither Solowicz nor the Developer dispute that the terms of the Community Declaration must be unambiguous; however, they do dispute whether the terms are unambiguous.

¶ 34. Ordinary contract rules apply to interpreting the terms of contracts such as the Community Declaration. *See Siler v. Read Inv. Co.,* 273 Wis. 255, 261, 77 N.W.2d 504 (1956). Wisconsin public policy favors freedom of contract. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 34, 296 Wis. 2d 1, 717 N.W.2d 835. Freedom of contract is based on the idea that individuals should have the power to govern their own affairs without interference. *Id.* Our goal in interpreting contracts that were freely entered into "is to determine and give effect to the parties' intention." *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276 (citing *Gorton v. Hostak, Henzl & Bichler, S.C.,* 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998)). Wisconsin public policy also "favors the free and unrestricted use of property." *Dodge v. Carauna,* 127 Wis. 2d 62, 65, 377 N.W.2d 208 (Ct. App. 1985) (citing *Crowley v. Knapp,* 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980)).

¶ 35. In order to accommodate the principle favoring free and unrestricted use of property and the principle favoring individuals' right to freely contract in ordering their own affairs, we generally have said that documents such as the Community Declaration must be expressed in unambiguous language to be enforceable contracts. *Pertzsch v. Upper Oconomowoc Lake Ass'n,* 2001 WI App 232, ¶ 8, 248 Wis. 2d 219, 635 N.W.2d 829 (citing *Dodge,* 127 Wis. 2d at 65); *see also Crowley,* 94 Wis. 2d at 435 (to be enforced, restrictions must be "expressed in clear, unambiguous, and peremptory terms"). We apply the standard set forth in *Zinda,* which includes ascertainment of the purpose of the

contract, to determine whether the Community Declaration is expressed in unambiguous terms. *See Zinda,* 191 Wis. 2d at 167.

¶ 36. Language "is ambiguous if it is susceptible to more than one reasonable interpretation." *Id.* at 165–66. However, if the intent of the contract can be certainly ascertained from the document itself, it will be enforced. *Id.* at 166. "By intent we do not mean the subjective intent of the drafter, but the scope and purpose of the [document] as manifest by the language used." *Id.* Furthermore, a document need not expressly prohibit the specific activity in question; when the purpose is ascertainable, the document should be construed to give effect to that purpose. *Bubolz,* 159 Wis. 2d at 294. Applying these principles of law to the Community Declaration, we determine that its terms are unambiguous in light of its purpose.

¶ 37. As previously stated, Article IX of the Community Declaration reserved to the Declarant control over Geneva National until "conveyance by Declarant of eighty-five percent (85%)" of the maximum number of residential units. Solowicz contends that the term conveyance is ambiguous because it was redefined two times,[23] which demonstrates that the term is subject to more than one reasonable interpretation. Solowicz further contends that because GN Partners, the original developer, conveyed certain undeveloped land in Geneva National to its lenders, who in turn transferred most of that land to the current Developer, the

---

[23] In its brief, Solowicz contends that conveyance has been redefined three times. However, the court finds no support for a third redefinition in Solowicz's citation to the record.

Declarant's control is terminated because it conveyed more than 85 percent of the units. We are unpersuaded.

¶ 38. We give effect to the purpose of the Community Declaration as manifest by the language used. *See Zinda,* 191 Wis. 2d at 166. We agree with the circuit court's characterization of the Community Declaration's purpose. It is unambiguously an attempt to position control of Geneva National with the Declarant until a significant number of the residential units are sold to allow the Declarant to promote the orderly development of the property according to the master plan. Accepting Solowicz's contention would contravene this purpose by eliminating Declarant control when only 52 percent of the residential units have been conveyed to individual unit owners; conveying land to a third-party lender does not eliminate the need for Declarant control over the property. The Declarant's two explanations of what constitutes a conveyance did not redefine the term, but instead served to reinforce the Community Declaration's purpose by concluding that a conveyance occurs when the Developer conveys a parcel to an owner or to a third-party developer who has platted the parcel.[24] Accordingly, the terms of the Community Declaration unambiguously maintain the Declarant's control until 85 percent of the residential units are conveyed to individual unit owners or to a third-party developer who has platted the parcels. Conveyance of 85 percent

---

[24] In 2006, the Developer explained that a "conveyance" requires a certificate of occupancy. Then, in 2007, responding to an interrogatory from Solowicz, the Developer further explained that a conveyance requires the Developer to sell a parcel to an individual third-party purchaser or to a third-party developer who has platted the parcel. This is because the Developer will not know how many units it conveyed until the third-party developer plats the parcel.

of the residential units to individual unit owners or third-party developers who have platted the parcels has not yet occurred.

## 2. Reasonable enforcement

¶ 39. Solowicz argues that even if the terms of the Community Declaration are unambiguous, the court must determine whether its terms are reasonable, and the Community Declaration unreasonably provides for unlimited and unending Developer control over the condominiums in Geneva National and is thereby unenforceable.

¶ 40. The Community Declaration is a contract or agreement between the Developer and those who choose to purchase property within Geneva National, as we have discussed above. However, the Community Declaration is also a type of servitude upon the land underlying Solowicz's condominiums because it places certain burdens on the ownership estates. *Black's Law Dictionary* 1492 (9th ed. 2009).

¶ 41. Wisconsin courts have consistently held that a servitude that is unambiguous at the time of its creation will be strictly enforced. *Gojmerac v. Mahn,* 2001 WI App 22, ¶ 31, 250 Wis. 2d 1, 640 N.W.2d 178 (citing *Hunter v. McDonald,* 78 Wis. 2d 338, 342–43, 254 N.W.2d 282 (1977)). Courts do not determine the reasonableness of such unambiguous servitudes. *See Pertzsch,* 248 Wis. 2d 219, ¶ 10 n.3; *Zinda,* 191 Wis. 2d at 171. The reasons for this conclusion are many. For example, we apply ordinary contract rules when interpreting the terms of a servitude. *See Siler,* 273 Wis. at

261. Parties also have the freedom to contract as they see fit, which is a well-established principle of law that Wisconsin courts have long recognized. *Watts v. Watts,* 137 Wis. 2d 506, 521, 405 N.W.2d 305 (1987).

██

¶ 42. Here, the contract (the Community Declaration) was recorded, affording plaintiffs' notice of all its terms. While we acknowledge that the freedom to contract may be tempered by basic common law principles, courts will not intervene and void an unambiguous contract absent the violation of a common law principle, which under the circumstances, requires that result. *See, e.g.,* unconscionability, *Wis. Auto Title Loans, Inc. v. Jones,* 2006 WI 53, ¶ 29, 290 Wis. 2d 514, 714 N.W.2d 155; bad faith, *M&I Marshall & Ilsley Bank v. Schlueter,* 2002 WI App 313, ¶ 15, 258 Wis. 2d 865, 655 N.W.2d 521; performance becomes impossible due to facts existing when the contract was made, which the non-performing party did not know and had no reason to know, *Estate of Zellmer v. Sharlein,* 1 Wis. 2d 46, 49, 82 N.W.2d 891 (1957); terms that contravene public policy, *Watts,* 137 Wis. 2d at 521; or terms that contravene a statute, *Baierl v. McTaggart,* 2001 WI 107, ¶ 12, 245 Wis. 2d 632, 629 N.W.2d 277. No such common law principle has been contravened by the Community Declaration.

¶ 43. As noted, Solowicz contends that there is a long line of cases holding that restrictive covenants with unreasonable terms are unenforceable. Solowicz misconstrues these cases. The Community Declaration is not simply a covenant that contains restrictions, but rather the overarching plan for the development of a 1,600 acre parcel. However, we nevertheless review the principles established by the restrictive covenant cases that Solowicz cites.

¶ 44. First, Solowicz cites to restraint of trade cases and wrongly attempts to import the reasonableness requirement in such cases to the contract at issue here. Contracts that contain restraints of trade are distinguishable because they are disfavored at law and "must withstand close scrutiny as to their reasonableness." *Star Direct, Inc. v. Dal Pra,* 2009 WI 76, ¶ 19, 319 Wis. 2d 274, 767 N.W.2d 898. In *Huntley v. Stanchfield,* 174 Wis. 565, 183 N.W. 984 (1921), cited by Solowicz, Patnaude sold a hotel property with a restrictive covenant in the deed that prohibited the property from being used as a hotel for 15 years. In a previous action, the court enjoined the defendants from using the property as a hotel. *Id.* at 566. Huntley claimed the defendants violated the injunction and requested the court hold them in contempt. *Id.* The defendants argued that the covenant was void because it was an illegal restraint of trade. *Id.* at 569. On this point, the court noted that the proper inquiry is whether:

> the restriction [is] a reasonable one under all the facts and circumstances of the transaction in the light of "the situation, business, and objects of the parties," and was the restriction "for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public[.]"

*Id.* at 570 (quoting *Cottington v. Swan,* 128 Wis. 321, 323, 107 N.W. 336 (1906) and cases there cited). Solowicz is correct in pointing out that the *Huntley* court determined whether the restrictive covenant was reasonable; however, *Huntley* is distinguishable because the covenant contained a restraint of trade. *Id.* at 568–69. The Community Declaration does not restrain trade. Accordingly, *Huntley*'s reasonableness inquiry is

inapplicable here. *Doherty v. Rice,* which reiterates the inquiry in *Huntley,* is also a restraint of trade case. *Doherty,* 240 Wis. 389, 3 N.W.2d 734 (1942). The deed in that case prohibited sale to and occupation by non-Caucasians, construction of residences that cost less than $600 and the use of outside toilets. *Id.* at 392.

¶ 45. Next, Solowicz argues that *McKinnon v. Benedict,* 38 Wis. 2d 607, 157 N.W.2d 665 (1968), *Le Febvre v. Osterndorf,* 87 Wis. 2d 525, 275 N.W.2d 154 (Ct. App. 1979), *Dodge,* 127 Wis. 2d 62 and *Weiland v. Paulin,* 2002 WI App 311, 259 Wis. 2d 139, 655 N.W.2d 204,[25] hold that the terms of a contract must be reasonable to be enforceable. We disagree. None of these cases declines to enforce a contract on the grounds that its terms are unreasonable; rather, the cases demonstrate the court applying equitable principles. Such equitable principles require the enforcement of a contract's terms be reasonable, not that the terms themselves be reasonable.

¶ 46. In *McKinnon,* the defendants purchased land that was being used as a resort. In need of financial assistance, defendants obtained a loan from plaintiff, the terms of which imposed a restraint on trade such that defendants could use the land for no purpose other than as a summer resort for a period of 25 years. *McKinnon,* 38 Wis. 2d at 615. Because of financial pressures, defendants added a trailer park and campsite. Plaintiff sought to enjoin defendant from operating the trailer park and campsite. *Id.* at 614–15. The court declined to use its equitable injunctive powers because the terms of the agreement were so unreasonably enforced that the contract was unconscionable. *See id.* at 622.

---

[25] *Weiland v. Paulin,* 2002 WI App 311, 259 Wis. 2d 139, 655 N.W.2d 204, *overruled in part, Weiland v. Paulin,* 2003 WI 27, 260 Wis. 2d 277, 659 N.W.2d 875.

¶ 47. In *Le Febvre,* the condominium declaration stated that "no unit may be rented without the prior written consent of the Board of Directors." *Le Febvre,* 87 Wis. 2d at 528. Plaintiffs, members of the board of directors, sought an injunction against the continued rental of certain units by the developer, which the circuit court granted. *Id.* The court affirmed, holding that based upon all the facts and circumstances, "it [was] reasonable to enforce this restriction by injunction." *Id.* at 535.

¶ 48. In *Dodge,* a deed restriction reserved the right for the subdivision developers to approve all buildings. *Dodge,* 127 Wis. 2d at 64. The court held that the restriction's approval standard was arbitrary and concluded "that where, as here, a common grantor reserves the right to approve building on a deeded property by arbitrary standards, the exercise of that right—*and not the restriction itself*—" must be reasonable. *Id.* at 66 (emphasis added).

¶ 49. *Weiland,* citing *McKinnon,* reaffirmed that "the reasonableness requirement for a deed restriction is grounded in principles of equity." *Weiland,* 259 Wis. 2d at 152. *Weiland* unequivocally states that "if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced." *Id.* at 149 (citing *Zinda,* 191 Wis. 2d at 166). In *Weiland,* the subdivision developers sought injunctive relief against the lot owners, alleging that the owners erected a manufactured structure on their lot without preapproval in violation of the declarations governing the subdivision. *Id.* at 143. The court held that it was reasonable to enforce the deed restriction and affirmed the grant of injunctive relief. *Id.* at 151.

¶ 50. In the case now before us, both the court of appeals and the circuit court cited *Pertzsch* in support of

the proposition that unambiguous contract terms need not be assessed for their reasonableness. Specifically, they relied on this passage:

> Because we reject the argument that the covenants contain no specific standard of approval for boathouses, we also reject the Association's reliance on *Dodge v. Carauna* . . . . [B]ecause the standards of approval in this case are not arbitrary, but are clear and specific, we are precluded from inquiring into the developer's intent or into any other evidentiary matters outside the four corners of the agreement.

*Pertzsch,* 248 Wis. 2d 219, ¶ 10 n.3.

¶ 51. Solowicz contends that *Pertzsch* should be overruled because it attempts to eliminate what Solowicz contends is Wisconsin's longstanding reasonableness requirement. We disagree. Rather, *Pertzsch* is the latest in a long line of cases recognizing that the reasonableness analysis of unambiguous contracts is limited to determining whether the terms of the contract were reasonably enforced.[26]

---

[26] *Williston on Contracts* supports this view. It states:

"[Parties] should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the *enforcement of the terms of a contract* so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability."

Richard A. Lord, 8 *Williston on Contracts* § 18:1 (4th ed. 2009) (quoting *Carlson v. Hamilton*, 332 P.2d 989, 990–91 (Utah 1958)) (emphasis added).

We decline to decide whether the Community Declaration was reasonably enforced. The issue was not developed in the briefs to this court or at oral argument. Further, like the circuit

¶ 52. Here, we have concluded that the terms of the Community Declaration are unambiguous and therefore, its terms need not pass a test as to their reasonableness in order to be enforceable.

## III. CONCLUSION

¶ 53. Two issues are presented for our review: (1) whether the Community Declaration, which affects the condominiums, is either subject to or contravenes Wis. Stat. ch. 703, the Condominium Ownership Act; and (2) whether the Community Declaration's terms, if unambiguous, must also be reasonable to be enforceable. We conclude that ch. 703 does not apply to the Community Declaration because the Community Declaration is not a document that creates condominiums. Rather, the Community Declaration provides the development scheme for a 1,600 acre planned community. Moreover, the Community Declaration does not contravene the protections of ch. 703 because the Developer does not exercise particularized day-to-day control over individual condominiums; rather, particularized day-to-day control of the terms of individual condominiums is vested in the unit owners. Furthermore, because the terms of the Community Declaration are unambiguous, those terms are not required to be reasonable, as well as unambiguous, in order to be enforceable. Accordingly, we affirm the decision of the court of appeals that affirmed the circuit court's decision granting the Developer's motion for summary judgment and denying plaintiffs' motion for summary judgment.

court, we conclude that no support has been shown for Solowicz's "vague claims" that the Developer acted inappropriately, illegally or in bad faith.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 54. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I join the mandate but write separately. My rationale is more narrowly linked to the facts and posture of this case than the majority opinion may be read to suggest.

¶ 55. This case involves a developing body of law known as "community association law," governing common-interest communities and their associations. For a discussion of this body of law, see Restatement of the Law (Third) of Property: Servitudes, ch. 6 (2000).

¶ 56. Absent a demonstrated conflict with the Condominium Act or a claim for equitable relief, the court should not undertake a far-reaching review of the Community Declaration in a declaratory judgment action to determine whether its provisions are per se unreasonable.

¶ 57. Failure of the Community Declaration to follow the prescriptions of the Condominium Act does not render the Condominium Act inapplicable. Here, each condominium is created and governed by a separate Condominium Declaration. Each Condominium Declaration explicitly subjects the property to the rights and privileges set out by the Condominium Act. The Community Declaration recognizes that separate Condominium Declarations and Condominium Associations are a part of the overall development and governance scheme at Geneva National.

¶ 58. Thus it is apparent that the Community Declaration and Condominium Declarations function in tandem to govern the rights of condominium owners at Geneva National.

¶ 59. Unlike Justice Prosser, who views today's decision as a blueprint for evading the requirements of the Condominium Act, *see* Justice Prosser's concurrence, ¶¶ 75–76, in my view today's decision rests on the fact that the plaintiffs have not shown specific interference by the developer within the self-governance of individual condominiums. To the extent that the plaintiffs protest potential interference where it has not yet has occurred, such claims are not ripe.

¶ 60. The majority's discussion of planned communities hints at recognizing, without benefit of statutory authorization, a new legal form in large-scale planned communities. Discussion or recognition of a novel legal form is unnecessary to resolve this case. No feature of Geneva National, including its scale, its mix of property uses, or its specific amenities, frees the developer to violate the requirements of the Condominium Act with respect to the condominiums.

¶ 61. The assertion that private planned communities (by whatever label) "function as semi-autonomous, private quasi-towns," majority op., ¶ 19, should not provide a basis for today's decision. Municipalities and other public governing bodies are accountable to citizens and property owners in many ways the developer at Geneva National is not. The Community Declaration does not appear to create any fiduciary or trust responsibilities protecting property owners' interests. Rather, the Community Association's duties and responsibilities are carried out "in the sole and absolute discretion of the Board of Directors."

¶ 62. Control of the governance structure at Geneva National is important to the property owners for many reasons, but perhaps most fundamental is the ability to levy assessments against property owners. Courts should not treat the development here, or others like it, as simply akin to private municipalities.

¶ 63. Yet in the present case, although abuses can be imagined, the plaintiffs have not demonstrated actions that contravene established law. Here, the plaintiffs are not challenging any allegedly unjust enforcement of particular covenant provisions. Rather, they argue that even provisions of the Community Declaration that have not been enforced against their interests should be struck down as per se unreasonable.

¶ 64. The plaintiffs identify objectionable actions by the developer, but they do so to illustrate their generalized claim of unreasonable control. The plaintiffs do not argue that any one action or assessment of dues or fees was by itself so unreasonable that it cannot be enforced. A court may decline to enforce the terms of a deed restriction, covenant, or contract when such enforcement would be unjust.

¶ 65. Although couched in terms of a declaratory judgment, the relief the plaintiffs seek is for the court to trigger the provision terminating the developer's powers and control. As a practical matter, the plaintiffs ask the court to oust the developer from the governance of Geneva National. Rather than invoking "reasonableness" as a shield to protect against unjust enforcement of the Community Declaration by the developer, the plaintiffs seek to use "reasonableness" as a sword—or at least as a sharp pen with which to rewrite the Community Declaration. The plaintiffs' allegations of unfair control in this case do not justify the potentially dramatic and laborious relief which they ask from the court.

¶ 66. For the foregoing reasons I write separately.

¶ 67. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that under the facts presented here the plaintiffs have failed to show that the developer's actions contravene established law. I write separately, however, to urge the legislature to examine

and consider enacting legislation that would balance some of the power and control issues presented by this case.

¶ 68. In 2008, the Uniform Law Commission (ULC)[1] approved amendments to the Uniform Common Interest Ownership Act. The amendments address a range of significant conflicts between unit owner associations and the individual members of those associations that had arisen in the years since 1994, when the ULC had last considered amendments to this uniform act. The intensity of the conflicts between owners and associations had become a growing focus both in the media and at professional conferences. There was a perception that individual unit owners were unduly disadvantaged in their dealings with those who control the decision-making apparatus.

¶ 69. The ULC recognized that simply offering amendments might not prove to be a viable approach for many states like Wisconsin that had not yet adopted the Uniform Common Interest Ownership Act. As a result, in 2008 it also promulgated a free-standing Uniform Common Interest Owners Bill of Rights Act, which focuses on conflicts between associations and unit owners.

¶ 70. Both uniform acts address aspects of association governance, with particular focus on the relationship between associations and individual members. As common ownership increases, so do the complexities and controversies associated with that form of ownership. Therefore, I suggest that the chief of the legislative reference bureau consider reporting this decision to the law revision committee to examine whether legis-

---

[1] The Uniform Law Commission is also referred to as the National Conference of Commissioners on Uniform State Laws. *See* Wis. Stat. § 13.55.

lation should be enacted to address this evolving area of law. *See* Wis. Stat. § 13.92(2)(j). Accordingly, I respectfully concur.

¶ 71. I am authorized to state that Justice DAVID T. PROSSER joins this concurrence.

¶ 72. DAVID T. PROSSER, J. *(concurring)*. The principal question before the court is whether a developer/declarant may file a restrictive covenant on its land that will govern any future condominiums established on that land and also override any provisions in Wis. Stat. ch. 703—the Condominium Ownership Act—that conflict with the restrictive covenant.

¶ 73. The court answers this question "yes." It answers this question "yes" by excluding from the coverage of Chapter 703 any filed instrument, including a restrictive covenant, that does not opt into Chapter 703 by complying with the detailed provisions of Wis. Stat. § 703.09.

¶ 74. The court's analysis is located in ¶ 16. It reads in part:

> We conclude that the Community Declaration [i.e., the developer/declarant's restrictive covenant] is not a condominium instrument subject to ch. 703 . . . . Condominium instruments include the condominium declaration, plat and plan. . . . [T]o qualify as a condominium declaration, the document "shall contain" "a statement of the owner's intent to subject the property to the condominium declaration" under the Act, a name including the word "condominium" and a description of the condominium's common elements. Wis. Stat. § 703.09(1)(a), (b), (d). No part of the Community Declaration evinces the Declarant's intent to subject all 1,600 acres to ch. 703.

Majority op., ¶ 16 (footnote omitted).[1]

¶ 75. The practical effect of this analysis is clear. At least prospectively, developers will be permitted to develop condominiums without ever ceding control of those condominiums to unit owners if they follow the simple expedient of filing unambiguous, carefully worded restrictive covenants before they file their condominium declarations.

¶ 76. The court's analysis provides a blueprint for evading the limitations and protections contained in the Condominium Ownership Act. The hole the court creates is so great that condominium law in Wisconsin may never be the same.

¶ 77. Admittedly, the court of appeals reached the same result. *See Solowicz v. Forward Geneva Nat'l*, 2009 WI App 9, 316 Wis. 2d 211, 763 N.W.2d 828. However, the court of appeals explained that:

> Geneva National is a private quasi-town, not a condominium. It is *a master-planned community* comprising 1600 acres with single- and multi-family homes, commercial and recreational property that caters to people who value its prized golf courses and other recreational options. Because such a complex community requires an extended time to develop and market, *we hold that master-planned communities are not subject to ch. 703.*

*Id.*, ¶ 1 (emphasis added).

¶ 78. The court backs away from the term "master-planned community" which is derived from the Uniform Common Interest Ownership Act (UCIOA), § 2–123 (1994), inasmuch as Wisconsin has not adopted UCIOA or anything like it. Instead, it employs the term "planned community." *See, e.g.* majority op., ¶¶ 3, 11,

---

[1] The Walworth County Circuit Court adopted a similar analysis in its decision granting summary judgment.

14, 16, 18, 19, 20, 21, 22, 23, 24 n.18, 28, 31, 53. Significantly, however, the court does not define the term "planned community." This is understandable, as the term "planned community" appears in the Wisconsin Statutes only once, and only in passing, in Wis. Stat. § 895.07(1)(b).[2]

¶ 79. The court's use of the term "planned community" is designed to give the impression that its holding applies to mixed-use condominium projects that are visionary, complex, and big. In fact, however, *if* a properly filed, carefully worded restrictive covenant can trump the provisions of Chapter 703, the size, number or type of the affected condominiums will not matter. Only the controlling effect of the restrictive covenant will matter.

¶ 80. Unfortunately, the court is not willing to confront the huge gap in Wisconsin law between condominiums under Chapter 703 and units of local government. Nor is it willing to acknowledge the full extent of the present developer's control of Geneva National as a result of that gap. This developer may be visionary and honorable in every respect. But the precedent created by the court's opinion opens the door to the kind of abuses by developers that have sparked controversy throughout the country. *See* Unif. Common Interest

---

[2] Wisconsin Stat. § 895.07 is entitled "Claims against contractors and suppliers." Subsection (1) contains definitions. Paragraph (b) reads: " 'Association' means a homeowner's association, condominium association under s. 703.02(1m), unit owner's association, or a nonprofit corporation created to own and operate portions of a *planned community* that may assess unit owners for the costs incurred in the performance of the association's obligations." (Emphasis added.) Wisconsin Stat. § 895.07 did not become part of Wisconsin law until April 11, 2006. *See* 2005 Wis. Act 201.

Ownership Act, prefatory note to the 2008 amendments, 7(IB) U.L.A. 224 (Master Ed. 2009).

I

¶ 81. A detailed statement of the facts is necessary to understand this case.

¶ 82. Geneva National describes itself as "Southern Wisconsin's most notable year-round golf resort community." It is located on Lake Como, four miles west of downtown Lake Geneva, in Walworth County. *See* www.gnbuilders.com.

¶ 83. On July 25, 1989, the original developer, GN Partners, was granted a conditional use permit to develop its 1600 acres of property. The following year, on May 21, 1990, GN Partners recorded a lengthy document with the Walworth County Register of Deeds. This document was entitled "Declaration of Covenants, Conditions, Restrictions and Easements for the Geneva National Community." This document, which the court refers to as the "Community Declaration," contained 12 articles covering more than 70 pages.

¶ 84. The Community Declaration begins with six "WHEREAS" clauses that read in part:

> WHEREAS, Declarant is the owner in fee simple of certain real property located in the Town of Geneva, Walworth County, Wisconsin . . . hereinafter referred to as the "Property;"
>
> WHEREAS, Declarant intends to develop the Property as a residential, recreational and commercial community . . .;
>
> WHEREAS, Declarant intends to construct at least two privately-owned golf courses, a privately-owned clubhouse, and other privately-owned recreational facilities on the Property.
>
> . . . .

598

WHEREAS, *Declarant intends to reserve the right, exercisable in its sole and absolute discretion, to subject to the provisions of this Declaration* at a later time . . . (i) *all or any portion of the real property described* . . . and (ii) such other real property as Declarant shall own from time to time.

*Id.* (emphasis added).

¶ 85. Article I of the Community Declaration is entitled "DEFINITIONS." Among the 50 definitions in Article I are the following:

(e) "Assessment" shall mean and refer to a share of the Community Expenses . . . and other charges from time to time assessed against a Unit and the respective Unit Owner by the Community Association . . . .

. . . .

(i) "Club" shall mean and refer to any one or more of those clubs as may be located on the Property and formed by or with the written consent of Declarant, including, but not limited to, the Club which is presently named Geneva National Golf Club and any other club on the Property. *Declarant presently owns all of the Clubs.* The Clubs are not owned or controlled by the Community Association, as hereinafter defined . . . .

. . . .

(q) "Community Expenses" shall mean and refer to all expenditures made or expenses incurred by or on behalf of the Community Association and the Trust, as hereinafter defined, together with all funds assessed for creating or maintaining reserves, as provided in this Declaration . . . .

(r) "Condominium" shall mean and refer to any parcel of land within the Property which is hereafter subjected to the Condominium Ownership Act of the State of Wisconsin.

599

(t) "Condominium Declaration" shall mean and refer to any instrument, and any amendments thereto, which is recorded in the Office of the Register of Deeds of Walworth County . . . and which creates a Condominium for any part of the Property. *All covenants, conditions, restrictions, easements and other provisions of each such Condominium Declaration shall be . . . subject and subordinate to all covenants, conditions, restrictions, easements and other provisions of this Declaration, unless otherwise expressly provided in this Declaration or in any amendment to this Declaration.*

*Id.* (emphasis added).

¶ 86. Article III is entitled "PROPERTY RIGHTS AND EASEMENTS." Section 3.01 of the article reads in part:

Each Unit Owner shall be entitled to the exclusive ownership and possession of the respective Unit and to the exercise of easement rights in accordance with this Declaration; provided, however, that *Declarant hereby reserves the right, in its sole and absolute discretion, to grant, transfer and assign, in whole or in part, to any additional Person for use in common with others any or all of the easement rights reserved or granted by Declarant pursuant to this Declaration.*

*Id.* (emphasis added).[3]

¶ 87. Article IV describes the "COMMUNITY ASSOCIATION."

¶ 88. Article V describes the "GENEVA NATIONAL TRUST."

---

[3] Article I, section 1.01(jj) defines "Person" to mean and refer to not only "a natural person" but also a "corporation, partnership, association, trust, or other legal entity, or any combination thereof."

¶ 89. Article IX is entitled "RIGHTS RESERVED TO DECLARANT." Section 9.01 reads in part as follows:

> *Control by Declarant.* ANY OTHER LANGUAGE OR PROVISION IN THIS DECLARATION, IN THE ARTICLES OF INCORPORATION OF THE COMMUNITY ASSOCIATION OR IN THE BYLAWS OF THE COMMUNITY ASSOCIATION TO THE CONTRARY NOTWITHSTANDING, prior to the conveyance by Declarant of eighty-five percent (85%) of the maximum number of Units which may be located on Single-Family Residence Grounds and Multiple-Family Residence Grounds . . . *Declarant shall have the right, exercisable at any time . . . (i) to remove and to appoint a successor for any member or members of the Board of Directors of the Community Association, any officer or officers of the Community Association, and any management company employed by the Community Association if, at any time, Declarant determines, in Declarant's sole and absolute discretion, that any such member, officer or management company is prejudicial to the rights of Declarant* . . . and (ii) to exercise the rights and discharge the duties and responsibilities of the [Geneva National] Trust and to select either the Community Association or any Club Owner to act under the conditions and in the manner provided in Section 5.01 of this Declaration.

*Id.* (emphasis added).

¶ 90. Section 9.02 gives the Declarant the right to execute all documents and undertake any actions affecting the Property which, in the Declarant's "sole and absolute discretion," are either desirable or necessary to exercise or enforce "any of the rights reserved or granted to Declarant." Section 9.03 gives the Declarant "sole and exclusive right to use the names 'Geneva National' and 'Geneva National Golf Club.'" Section

9.05 reiterates Declarant's "exclusive right, in its sole and absolute discretion," to grant or assign easement rights to additional persons.

¶ 91. Section 9.04 is entitled "Individual Condominium Associations." This section reads in part:

> The Declarant reserves the right to review and, in the sole and absolute discretion of Declarant, approve the Declaration of Condominium, Articles of Incorporation, Declaration of Covenants, Conditions and Restrictions, Bylaws, and rules and regulations of *any Condominium and any Condominium Association created for any portion of the Property* . . . and to also so review and approve all amendments to all such documents in its sole and absolute discretion, *and no such documents or amendments shall be effective unless and until approved in writing by Declarant.* . . . No articles of incorporation shall be filed with the Secretary of State . . . no Condominium Declaration and no declaration of covenants, conditions and restrictions shall be effective or filed . . . nor shall any amendments to any such documents be effective, unless and until the Declarant approves said documents in writing, which approval shall be at the sole and absolute discretion of Declarant. *There shall be no other community association and no homeowner's association formed within the Property unless and until Declarant approves in writing any such formation.*

*Id.* (emphasis added).

¶ 92. Article XI of the instrument is entitled "AMENDMENTS." Section 11.01(a) provides in part:

> During any period in which Declarant retains the right to remove and appoint successors to any directors . . . *Declarant may amend this Declaration* by an instrument recorded [with] the Office of the Register of Deeds . . . *without the approval of any Unit Owner or*

602

*mortgagee* of any part of the Property [with a qualifi-
cation, as determined by Declarant in its sole and
absolute discretion].

*Id.* (emphasis added).

¶ 93. Section 11.01(b) provides in part that "Each
Unit Owner, by acceptance of a deed or other convey-
ance to a Unit, agrees to be bound by all amendments
permitted by this Article XI."

¶ 94. Article XII is entitled "GENERAL PROVI-
SIONS." The article reiterates that the covenants, re-
strictions, conditions, reservations, easements, charges
and liens contained in the Declaration "run with and
bind the land" and are enforceable by, among others,
"the Declarant." Article XII, § 12.01. The article gives
the Community Association the power to impose "rea-
sonable monthly fines" against Unit Owners and to
"suspend a Unit Owner's right to vote on matters
brought before the Members." Article XII, § 12.09.

¶ 95. Section 12.12 concludes:

> *Discrepancies Between This Declaration and Docu-*
> *ments Subsequently Recorded.* In the event of any
> discrepancy, inconsistency, conflict or contradiction be-
> tween the provisions of this Declaration and the provi-
> sions of any other document affecting the Property
> recorded subsequent to the recording of this Declara-
> tion . . . unless it is otherwise expressly provided by or
> with the consent of Declarant in any amendment to this
> Declaration or in any such other document affecting
> the Property which is recorded subsequent to this
> Declaration, *the provisions of this Declaration shall*
> *control* and shall remain in full force and effect.

*Id.* (emphasis added).

¶ 96. Shortly after it recorded the Community
Declaration, GN Partners recorded multiple Condo-
minium Declarations with the Walworth County Regis-

603

ter of Deeds. These documents were entitled "Declaration of Condominium Ownership and of Easements, Restrictions, Conditions and Covenants for Geneva National Condominium No. ____."

¶ 97. The first page of each Condominium Declaration states:

> *Declarant intends by this Declaration to subject the Real Estate Parcel, together with all* buildings, structures, improvements and other permanent fixtures of whatsoever kind which are now, or at any time hereafter, located thereon, and all *rights and privileges belonging or pertaining thereto, to the provisions of the Condominium Ownership Act of the State of Wisconsin,* as amended from time to time.

*Id.* (emphasis added).

¶ 98. The Condominium Declarations required Declarant to form the Condominium Master Association, Inc. The Condominium Master Association, Inc. is the kind of association described in Wis. Stat. § 703.155.

¶ 99. The Condominium Master Association, Inc. is different from (1) the Community Association outlined in Article IV of the Community Declaration [Restrictive Covenant], and also (2) any association of unit owners, *see* Wis. Stat. § 703.15, for any of the multiple condominiums within the Geneva National Property.

¶ 100. The powers of the Community Association are extensive. They are spelled out in Section 4.02 of the Community Declaration [Restrictive Covenant]. They include the power to provide for a general fund; levy assessments; enforce any lien for nonpayment of assessments; maintain private roadways and other portions of the Property; contract with any person, including Declarant, for security services, water supply, sanitary sewer service, operation, maintenance, and repair

of private roadways, cable television, and television antennae; buy, sell, lease, pledge, mortgage and hold title to real and personal property; obtain secured and unsecured loans; encumber the assets of the Community Association to pay Community Expenses; hire agents, employees, management services, and professional services; and "take any other lawful action necessary in the sole and absolute discretion of the Board of Directors" to exercise all powers and discharge all duties and responsibilities and liabilities of the Community Association. The composition and voting power of the five members of the Board of Directors is set out in Article IV of the Community Declaration, as amended.

¶ 101. The powers and duties of the Condominium Master Association are more limited than the powers and duties of the Community Association because they are administrative only and include such routine tasks as repair and maintenance of multi-family buildings, landscaping, snow removal, street sweeping, and providing insurance and common area utilities. The Condominium Master Association, consisting of representatives from all distinct condominium parcels on the Property, may levy assessments to support its limited powers and duties.

¶ 102. The other entity that governs the Property is the Geneva National Trust, described in Article V of the Community Declaration. The Geneva National Trust is administered by three trustees. Its purpose is "to provide for the orderly development of the Property, to preserve and maintain the natural environment within the Property," *see* Section 5.01, and "to adopt and enforce Architectural Standards as provided in Article VIII." Section 5.03(a). However, the Trust also is empowered "to take any other action appropriate or nec-

essary in the sole and absolute judgment and discretion of the Trustees to fulfill the Trust purposes." Section 5.03(d).

¶ 103. Section 5.06, entitled "Financial Affairs of the Trust," provides in part that "[a]ll costs and expenses incurred by the Trust shall be paid by the Community Association." "All costs and expenses of the Trust submitted by the Trust to the Community Association shall be immediately paid, and the Trust shall have no obligation to seek or obtain the prior consent or the subsequent approval" of the Community Association. *Id.* In short, the Community Association is required to assess Unit owners for the expenses of the Trust.

II

¶ 104. The interests of the original developer/ declarant, GN Partners, were acquired by Forward Geneva National in 2001. Forward Geneva National, in turn, was acquired by Keefe & Associates, Inc. in 2005. There is no dispute that Forward Geneva National is the successor-in-title to the original developer/declarant's interest in the Property. There also is no dispute that whoever controls Forward Geneva National is entitled to exercise all rights that GN Partners was entitled to exercise.

¶ 105. The present developer, Keefe & Associates, Inc., has enormous *direct* power. It has the power to amend the Restrictive Covenant without the approval of others. This includes the power to amend the 85 percent provision that is slated to diminish the developer's power at some point in the future. It has the power to undertake any action affecting the Property that the developer deems desirable or necessary to

exercise or enforce any right reserved or granted to the developer. It has the power to remove elected directors of the Community Association, officers of the Community Association, and management companies hired by the Community Association, and to appoint successors. It also has a never-ending power to name one of the five directors of the Community Association. In addition, it has the power to exercise the rights and discharge the duties of the Geneva National Trust. And it has the power to approve *any* condominium declaration, *any* bylaws, and *any* rules and regulations of *any* condominium or condominium association within the Property. Considering this latter power, it is difficult to understand how the court of appeals could conclude that the "Developer has no control over the Condominium Master Association." *Solowicz,* 316 Wis. 2d 211, ¶ 4, and how that conclusion is confidently reasserted in the court's opinion. Majority op., ¶ 5.

¶ 106. The developer also has control over the Geneva National Trust. According to the petitioners, "The majority of the Trustees are principals of the Developer: The unelected Trustees are Michael Keefe, Robert Keefe, and their business partner Paul Votto." The Trust is independent of the Community Association. As a result, the Trust may dictate to the Community Association assessments upon Unit owners.

¶ 107. Ostensibly, the developer has only four of the 19 votes that are cast by Directors of the Community Association. In 2006, however, the vice president of the Community Association was Scott Lowell, a builder with close ties to Keefe & Associates. In December 2005 Keefe & Associates purchased the interest of Harlow, LLC in Forward Geneva National. At a Geneva National Community Town Hall meeting in February 2006, Community Association Treasurer Rob Keefe

607

explained that "Harlow, under the leadership of Scott Lowell, will remain active within Geneva National as a builder and property owner." Thus, an officer of one of the former owners of Forward Geneva National remains active, in part, by serving as Vice President of the Community Association, representing commercial interests.

¶ 108. The Secretary of the Community Association, according to a 2006 document in the record, was Kevin Paluch, representing the Paloma Golf Group, Inc. [e.g., a Club]. As noted in the Community Declaration, all Clubs were owned by the developer/declarant at the time the Declaration was filed. In 2001 the developer altered the Declaration to reduce the assessments on Clubs by shifting all assessments related to the Swim and Racquet Club to *residential* unit owners. This amendment was signed on behalf of the developer by Kevin Paluch, Vice President of Paloma Development Group, Inc. Presumably, what the developer giveth in terms of assessment relief to Clubs, the developer may taketh away.

¶ 109. To sum up, Robert Keefe, the President of Keefe & Associates, the developer, is also one of three trustees of the Geneva National Trust and Treasurer of the Community Association. He has the power to remove any other director of the Community Association, as well as its executive director—who in 2006 also happened to be the executive director of the Condominium Master Association. In reality, the developer controls both the Geneva National Trust and the Community Association.

III

¶ 110. One purpose of the 1990 Community Declaration was to establish "an overall development

scheme for the 1,600[-]acre planned community." Majority op., ¶ 16. An equally important purpose was to assure the developer's control of the "planned community," in every important respect, for as long as the developer wished to retain power. The intent of the Community Declaration in this latter regard is absolutely clear. There are no "checks and balances" in the document. The dispersal of power is largely illusory. As noted above, the Community Declaration trumps the Condominium Ownership Act whenever the two conflict.

¶ 111. Petitioners now challenge the degree and duration of the developer's control of the residential condominiums at Geneva National. In reviewing this challenge, the court appears untroubled that the Geneva National "community of condominiums" is not subject to the Condominium Ownership Act except when the developer wants it to be. If developers are able to secure all the benefits of the condominium form of ownership without submitting themselves to the statutory limitations of the Condominium Ownership Act, they will render the statutory protections of unit owners a legal mirage.

¶ 112. As I see it, petitioners have presented a convincing picture of one-sided control by the developer. However, they have not constructed a compelling argument that the Community Declaration that affords this control is unlawful. They have not pointed to specific Wisconsin statutes that invalidate the Community Declaration nor have they persuaded any justice that "public policy" permits and requires this court to rewrite a 70–page document to give them a better deal. The truth is, this court is not in a position to concoct a remedy for every alleged wrong. In my view, the petitioners have made a strong case for the Wisconsin

legislature to adopt the Uniform Common Interest Ownership Act to provide additional protections to unit owners.

¶ 113. The individual provisions in the Community Declaration related to developer control are not ambiguous. An argument might be made that provisions of the Condominium Declarations are ambiguous *in context* because the declarant's stated intent in the Condominium Declarations "to subject the Real Estate Parcel . . . to the provisions of the Condominium Ownership Act of the State of Wisconsin" is decisively overcome by multiple provisions in the Community Declaration. However, petitioners do not make an extended argument with respect to *contextual ambiguity*[4] and how it would affect the outcome, and they do not present evidence that they and other unit owners were duped when they acquired their units.

¶ 114. Legislative redress appears to be the most promising means of effecting greater balance among the numerous interests in this "planned community." The 2008 amendments to the Uniform Common Interest Ownership Act seek to enhance the protections of unit owners. In my view, greater balance among the interests would make Geneva National a more appealing venue for present and future residential unit owners.

¶ 115. For the foregoing reasons, I reluctantly concur.

---

[4] *See Folkman v. Quamme,* 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857.