**2023 WI App 55**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2021AP2149

Complete Title of Case:

**PHEASANT WEST, LLC,**

    **PLAINTIFF-APPELLANT-CROSS-RESPONDENT,**

    **V.**

**UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC.,**

    **DEFENDANT-RESPONDENT-CROSS-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | October 11, 2023 |
| Submitted on Briefs: | October 12, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Grogan and Lazar, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Cynthia M. Mack* of *Lichtsinn & Haensel, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Laura E. Callan, Jeffrey A. Mandell* and *Colin T. Roth* of *Stafford & Rosenbaum, LLP*, Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

October 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2149**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV1889**

**IN COURT OF APPEALS**

---

PHEASANT WEST, LLC,

  PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

UNIVERSITY OF WISCONSIN MEDICAL FOUNDATION, INC.,

  DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Affirmed in part, reversed in part and cause remanded with directions; cross-appeal reversed and cause remanded with directions*.

Before Neubauer, Grogan and Lazar, JJ.

¶1 LAZAR, J. Pheasant West, LLC appeals the circuit court's summary judgment order interpreting a commercial property lease in favor of its tenant,

University of Wisconsin Medical Foundation, Inc., dismissing Pheasant West's amended complaint for declaratory judgment and multiple breaches of contract, and granting in part and denying in part UW Medical Foundation's counterclaims ordering payment for inappropriate insurance premiums together with some attorneys' fees. In addition, UW Medical Foundation cross-appeals with respect to that same order and the denial of its counterclaim for rent abatement and to more fully recover its attorneys' fees.

¶2     The UW Medical Foundation (the "Foundation") asserts that the circuit court appropriately concluded that Pheasant West was required to pay for the repairs to the Foundation's improvements, alterations, and additions, that it was entitled to abate all rent until all of the repairs were completed, and that Pheasant West's specific performance claim was without merit. It further asserts that the court correctly held that Pheasant West had defaulted on the lease by not timely returning an improperly demanded flood insurance premium, but that the court erred by denying its rent abatement counterclaim and request for full attorneys' fees. We agree in part, and affirm the appeal with respect to the denial of two of Pheasant West's breach of contract claims, but, while we conclude that the Foundation is entitled to rent abatement, we reverse and remand for a determination of how much rent should be abated. We next reverse as to the cross-appeal because, as noted above, the Foundation is entitled to the return of some rent payments and that means it may also be entitled to additional attorneys' fees. We further remand to the circuit court to determine the appropriate award, if any, of attorneys' fees related to damages on the issue of the landlord's default (on whether the failure to refund money for the rent overpayment was a breach).

2

**BACKGROUND**

¶3      The Foundation has leased a 200,000 square foot, four-story administrative office building (the "Building") in Middleton, Wisconsin, since 2008.  Pheasant West acquired the Building and surrounding real property (the "Premises")[1] from Discovery Springs, LLC and took over the lease by assignment after the lease was signed but before the Foundation moved into the Building.  Thus, Pheasant West is the Foundation's landlord.

¶4      The lease includes several provisions relevant to the dispute between landlord and tenant in this appeal.  Landlord Pheasant West was required to complete certain construction work and landscaping under § 6.1 to prepare the Premises for occupancy.  But § 6.4 provides that the Foundation was responsible for other work in preparation of occupancy and the supply of certain fixtures, furnishings, and equipment, some of which the landlord could require the Foundation to remove at the Foundation's expense upon expiration or termination of the lease, but all of which would become the landlord's property.  Similarly, § 12.4 gives the Foundation the right to make certain additions and alterations with the landlord's approval which would become the landlord's property—except for "fixtures, customized cabinetry, office furniture and equipment, … other personal property of Tenant," and the items the landlord could require the Foundation to remove at the end of the lease.

¶5      Under § 4.4, the Foundation would pay invoices for "Operating Expenses" prepared by Pheasant West each month.  Sections 13.5 and 13.6 explain that each party must maintain certain forms of property insurance.  The landlord's

---

[1]  Per § 1.1 of the lease, the Premises consist of the Building (shown in lease Exhibit A) and the real property (described in lease Exhibit B).

policy insuring the "full replacement cost value of the Building" is the landlord's expense "subject to reimbursement to the extent provided in Section 4."

¶6      Finally, § 14 deals with damage and destruction.  Section 14.1 provides that the landlord must undertake repair for "minor damage" (defined as "less than twenty-five percent … of the cost of replacement of the Premises") at the landlord's expense.  Section 14.3 provides that if damage, or repairs and rebuilding resulting from damage, renders the Premises "untenantable, in whole or in part, for any period of time," tenant "shall be entitled to abatement of Rent in an amount proportionate to the area within the Premises rendered untenantable by the damage" until repairs or rebuilding are complete.  It also states that, if the landlord elects to make repairs, "Tenant shall repair or replace its stock-in-trade, trade fixtures, furniture, furnishings, equipment and personal property in a manner and to at least a condition equal to that prior to its damage or destruction."

¶7      On August 20-21, 2018, Middleton experienced a historic storm that resulted in approximately eighteen inches of standing water in the Building.  The floodwater (from both rainfall and sewer backups) damaged furniture, drywall, flooring, cabinets, and equipment, as well as building systems including plumbing, electricity, and HVAC.  The Foundation moved its operations and its 600 employees who normally worked in the Building to other locations.  It had already paid its August rent in full, but it made no further rent payments until it moved back into the Building after remediation was complete.

¶8      Pheasant West undertook clean-up of the Building and remediation of the damage at an asserted cost of $2.8 million.  It requested that the City of Middleton Building Inspector issue a new certificate of occupancy for the Building on September 7, 2018.  That same day, the inspector issued a partial certificate that

covered the upper floors, the lobby, and some stairwells, but not the first floor. He issued a final, full occupancy approval on October 29, 2018, at which point the Foundation moved back in and paid rent for the final two days of October and for November 2018. Pheasant West requested contribution from the Foundation for the costs of damage remediation, but the Foundation refused to pay.

¶9 Almost seven weeks after the flood, on October 8, 2018, Pheasant West obtained flood insurance on the Building. Pheasant West passed along the premium for this insurance to the Foundation in its February 6, 2019 invoice for operating expenses. The Foundation paid this expense, but approximately eighteen months after payment, requested that it be refunded. Pheasant West issued a credit to the Foundation for this expense fifty days after the Foundation demanded the refund.

¶10 On October 18, 2018, even before it received an authorization for full use of the Building, Pheasant West filed a complaint (amended on October 2, 2019) asserting breach of contract claims against the Foundation for the Foundation's refusal to make certain repairs, pay for repairs, pay for rent for September and October of 2018, and maintain insurance on tenant improvements. The Foundation asserted counterclaims, alleging that Pheasant West breached the lease by disclaiming responsibility for flood damage and refusing to refund the rent for the ten days in August 2018 that the Premises was untenantable.

¶11 On cross-motions for summary judgment in October 2020, the circuit court dismissed Pheasant West's claims and issued six declarations, including interpreting the lease to say that: (1) Under § 14.1 of the lease, Pheasant West was responsible for flood damage repair (except for repair of "tenant's trade fixtures, customized cabinetry, office furniture and equipment, and personal property");

5

(2) Under § 14.3 of the lease, the Foundation was entitled to rent abatement from August 21-October 29, 2018; and (3) Under the same section, the Foundation was not required to put in "exact replacement[s]" of furniture, equipment, and personal property so long as it did not "diminish the value of the building." The court did side with Pheasant West in holding that under § 13.6 of the lease, the landlord had no obligation to maintain a flood insurance policy on the improvements and personal property in the Premises.

¶12 In a second summary judgment decision, in November 2021, the circuit court addressed the Foundation's counterclaims. It determined that, although "abatement is a tenant right," it does not "create an obligation on the landlord." Therefore, the court held, Pheasant West's failure to return the Foundation's rent paid for August 21-31, 2019, did not constitute a default under the lease. Regarding flood insurance, however, the court found that Pheasant West was in default under the lease for failing to refund the Foundation's payment for that insurance within thirty days of the Foundation's request. In view of this split decision, the circuit court awarded the Foundation only those attorneys' fees related to the issue of the flood insurance payment and reimbursement.

¶13 Both parties appeal. Pheasant West seeks reversal of the circuit court's ruling that it is responsible for replacing the Foundation's flood-damaged property incorporated into the Premises under §§ 6.4 and 12.4 of the lease, which, it alleges, is the Foundation's personal property. Pheasant West also asserts that the circuit court erred in dismissing its claims against the Foundation on summary judgment for unpaid rent in September and October of 2018 and replacement of property damaged by the flood. Finally, it requests reversal of the circuit court's finding of default related to the flood insurance premium refund. The Foundation

cross-appeals, seeking reversal of the circuit court's dismissal of its rent abatement counterclaim and partial denial of attorneys' fees.

## STANDARD OF REVIEW

¶14 We review a circuit court's summary judgment decisions de novo, "applying the same method employed by the [circuit] court." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶2, 275 Wis. 2d 397, 685 N.W.2d 853. "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496-97, 536 N.W.2d 175 (Ct. App. 1995); WIS. STAT. § 802.08(2) (2021-22).[2] Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Energy Complexes, Inc. v. Eau Claire County*, 152 Wis. 2d 453, 462, 449 N.W.2d 35 (1989). The methodology of review has oft been set forth and is not repeated here. *See Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503; *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

¶15 Moreover, "[w]hen we apply undisputed facts to the terms of a commercial lease, and determine the parties' rights under that lease, we exercise de novo review." *Walters v. National Props., LLC*, 2005 WI 87, ¶6, 282 Wis. 2d 176, 699 N.W.2d 71; *Westhaven Assocs., Ltd. v. C.C. of Madison, Inc.*, 2002 WI App 230, ¶12, 257 Wis. 2d 789, 652 N.W.2d 819 (quoting *Bence v. Spinato*, 196 Wis. 2d 398, 408, 538 N.W.2d 614 (Ct. App. 1995) ("[T]he application of a set of facts to the terms of a commercial lease and the determination of the parties' rights under

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that lease present questions of law that we review independently of the [circuit] court's determination.") (first alteration in original)); ***Town Bank v. City Real Est. Dev., LLC***, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.

## DISCUSSION

¶16    Despite the complex nature of the lease and the historic nature of the storm, when it all comes down to it, this appeal can be resolved under a standard breach-of-contract analysis.  The terms of the lease are plainly set forth and, after careful consideration, lend themselves to straightforward determinations.  But, in the end—as it should always be—the plain language of the provisions of the lease mean what they say and should be interpreted to give that meaning effect.

**I.    The circuit court properly granted summary judgment to the Foundation on all of Pheasant West's claims, except as it pertains to tenantability for a short period of time between the partial and full occupancy certificates.**

¶17    In this case, Pheasant West challenges the circuit court's unfavorable summary judgment ruling on three of its claims.  Each decision, however, involved an interpretation of the plain language and meaning of the relevant lease provisions.  Aside from the issue of proportionate rent abatement, there are no material facts in dispute.  We conclude that the circuit court's interpretation of these lease provisions was correct.  Its application of the rent abatement doctrine, however, is incorrect.

**A. The lease assigns liability for repair of flood damage to Pheasant West, including repair of the Foundation's improvements, alterations, and additions.**

¶18   Starting with the plain language of the lease, under §§ 14.1 and 12.1 of the lease, Pheasant West is obligated to "repair the minor damage to the Premises at [its] expense" when the Premises suffers "minor damage" caused by "fire or other casualty." "Minor damage" is damage "to the extent of less than twenty-five percent (25%) of the cost of replacement of the Premises." § 14.1. There is no dispute that there was minor damage to the Premises and that the historic storm and resulting flooding of the Building constitutes a "casualty event" that triggered Pheasant West's repair obligations.

¶19   The terms of the lease, in particular § 14.1, establish that Pheasant West's repair obligations are not limited to the work it performed on or to construct the Premises. In § 1.1, the lease defines the "Premises" as the "entire building known as [t]he UWMF Administrative Building … and the real property described on Exhibit B" to the lease.[3] Pheasant West contends that the Foundation's improvements and additions that it intends to keep are merely destined *to become* part of the Premises in the future and that property attached to the Premises by the Foundation, in accord with §§ 6.4 or 12.4, cannot both be part of the Premises and property of the Foundation. Thus, Pheasant West asserts, it was not required to presently pay for these repairs. This is not supported by the terms of the lease. There is no exception for the property the Foundation attached to the Premises in the lease's definition of "Premises," and Pheasant West does not point us to any provision that supports that assertion.

---

[3]  In lease Exhibit A, the entire Building is shown cross-hatched in the sketch.

9

¶20 The issue centers upon what constitutes the "Premises" and whether that term encompasses the improvements, alterations, and additions to the Building made by the Foundation. The circuit court concluded that it did. In one of its declarations interpreting the lease, the circuit court expressly distinguished what Pheasant West was—and was not—obligated to repair:

> As used in section 14.1, the term "the Premises" is the entire building including the improvements made by [Pheasant West] and the improvements, alterations, and additions made by the [Foundation], though it does not include (1) the [Foundation's] trade fixtures, customized cabinetry, office furniture and equipment, and personal property; (2) items of [the Foundation's] work that [Pheasant West] has indicated require removal at the time [Pheasant West] approved [the Foundation's] work; or (3) structural alterations or additions that [Pheasant West] has indicated require removal at the time [Pheasant West] gives approval to such alteration or addition.

¶21 It is clear that the Foundation's "trade fixtures, customized cabinetry, office furniture and equipment, and personal property" need not be repaired at Pheasant West's expense. The same applies for any of the Foundation's work, structural alterations, or additions that Pheasant West had marked for removal when it gave authority for their installation. Pheasant West has not sought recompense for repairing any of those items.

¶22 It may well be that Pheasant West regrets the terms it bargained for and placed within the lease, but it is not for this court to interfere with competent citizens' ability to freely contract. Our state supreme court, in ***Town Bank***, 330 Wis. 2d 340, ¶33, succinctly set forth this principle:

> This court has long recognized the importance of protecting parties' freedom to contract. *See, e.g.,* ***Solowicz v. Forward Geneva Nat'l, LLC***, 2010 WI 20, ¶¶34, 41, 323 Wis. 2d 556, 780 N.W.2d 111; ***Whirlpool Corp. v. Ziebert***, 197 Wis. 2d 144, 148, 539 N.W.2d 883 (1995); ***Watts v. Watts***, 137 Wis. 2d 506, 521, 405 N.W.2d 303 (1987); ***Kuhl***

> ***Motor Co v. Ford Motor Co.***, *270 Wis. 488, 493, 71 N.W.2d 420 (1955)*. When construing contracts that were freely entered into, our goal "is to ascertain the true intentions of the parties as expressed by the contractual language." ***State ex rel. Journal/Sentinel, Inc. v. Pleva***, 155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990); *see also **Solowicz**, 323 Wis. 2d 556, ¶34.* Stated another way, the best indication of the parties' intent is the language of the contract itself, ***Levy v. Levy***, 130 Wis. 2d 523, 535, 388 N.W.2d 170 (1986), for that is the language the parties "saw fit to use," ***Journal/Sentinel***, 155 Wis. 2d at 711. We construe the contract language according to its plain or ordinary meaning. ***Huml v. Vlazny***, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807. "If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." ***Id.*** Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent. ***Capital Invs., Inc. v. Whitehall Packing Co.***, 91 Wis. 2d 178, 190, 280 N.W.2d 254 (1979).

¶23 Accordingly, courts "will not read words into the contract that the parties opted not to include." ***Pulkkila v. Pulkkila***, 2020 WI 34, ¶26, 391 Wis. 2d 107, 941 N.W.2d 239. The lease contemplates future work by the Foundation, as approved by Pheasant West, to accommodate the Foundation's evolving business needs. *See* Lease, § 12.4. That work became part of the Premises, and Pheasant West is responsible for repairing it.

¶24 Pheasant West's other attempts to circumvent the circuit court's lease interpretations are also inapt. While it is correct that "[a]t common law the tenant bore the risk of a fire or any other casualty loss," ***Maryland Arms Ltd. Partnership v. Connell***, 2009 WI App 87, ¶10, 320 Wis. 2d 147, 769 N.W.2d 145 (***Connell I***) (quoting Judicial Council Committee Note, 1969, WIS. STAT. § 704.07), *aff'd* 2010 WI 64, 326 Wis. 2d 300, 786 N.W.2d 15 (***Connell II***), a lease supersedes such common law. In fact, the Note cited by the ***Connell I*** court expressly states: "Such a rule was too harsh, and many states including New York and Wisconsin changed

the rule by statute." ***Connell I***, 320 Wis. 2d 147, ¶10.  Not only that, but "[t]he primary goal in contract interpretation is to 'give effect to the parties' intent as expressed in the contractual language.'" ***Connell II***, 326 Wis. 2d 300, ¶22 (citation omitted).  "We ascertain the parties' intentions by looking to the language of the contract itself." ***Seitzinger v. Community Health Network***, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426; ***Journal/Sentinel***, 155 Wis. 2d at 711.  It is not a windfall to require a party to a lease to be bound by the bargained-for terms and obligations of that lease, especially where, as here, both parties are sophisticated parties.  "It is not the function of the court to relieve a party to a freely negotiated contract of the burdens of a provision which becomes more onerous than had originally been anticipated." ***Ash Park, LLC v. Alexander & Bishop, Ltd.***, 2015 WI 65, ¶38, 363 Wis. 2d 699, 866 N.W.2d 679.

¶25     Pheasant West fails to explain why it should not abide by the lease and pay for repairs to the types of improvements, alterations, and additions that the Foundation made to the Premises.  The Foundation took possession of the Building when it consisted of a large amount of unfinished warehouse space.  The Foundation built out that space by installing walls, doors, flooring, millwork, and other basic improvements.  The cost of repairs to these items are among the costs Pheasant West apparently seeks to recover.  These items are clearly not movable or temporary,[4] and fall within the ambit of items the lease requires Pheasant West—as the landlord who will ultimately utilize them for future tenants—to repair.  They are not "tailored

---

[4] *See Personal Property*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Any movable or intangible thing that is subject to ownership and not classified as real property.").

modifications" that only "provide a benefit to the [Foundation's] business over the course of the lease," as Pheasant West asserts.[5]

¶26    Finally, Pheasant West's contention that, despite the clear language of §§ 6.4 and 12.4 of the lease, evidence of the parties' intent to recognize a tenant's responsibility for repair of its improvements can be gleaned from elsewhere in the lease, is also without merit.   The provisions it cites (for insurance and indemnifications) are general provisions that do not deal with casualty situations like this historic storm.   Just as with statutory interpretation, a specific provision takes priority over a general provision.  *Goldmann Tr. v. Goldmann*, 26 Wis. 2d 141, 148, 131 N.W.2d 902 (1965) ("Another important rule employed in construing agreements is that where there is an apparent conflict between a general and a specific provision, the latter controls."); *see also* *James v. Heinrich*, 2021 WI 58, ¶22, 397 Wis. 2d 517, 960 N.W.2d 350.   Thus, Pheasant West's argument fails. Furthermore, this court does not accept Pheasant West's assertion that § 14.1 is ambiguous.

¶27    As in all contract (and lease) interpretation cases, this court must "read [the document] as a whole, to avoid the potential for ambiguity that can result if a small part of the agreement is read out of context." *Little Chute Area Sch. Dist. v. Wisconsin Educ. Ass'n Council*, 2017 WI App 11, ¶25, 373 Wis. 2d 668, 892 N.W.2d 312.   "The general rule as to construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole." *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶38, 362 Wis. 2d 258, 864 N.W.2d 83 (quoting *Tempelis v. Aetna Cas.*

___

[5] This court further notes that Pheasant West talks in generalities about common law and the lease, but points to no lease provisions that unambiguously alter the repair obligations specifically set forth in § 14.1.

*& Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992)). Accordingly, the circuit court correctly declared that the lease (§ 14.1) expressly placed the duty to repair the Premises solely on Pheasant West, including the improvements it made *and* the improvements, alterations, and additions made by the Foundation. The court's decision was based upon the plain, unambiguous language of the lease.

**B. The lease enabled the Foundation to abate proportionate rent until the repairs were complete and untenantable areas were available.**

¶28 Again, this court starts with the plain language of the lease to determine whether, and for what period of time, the Foundation was entitled to abate its rent payments, as well as what amount of abatement is appropriate. And, again, that language is clear and unambiguous. Section 14.3, aptly entitled "Abatement of Rent," provides in relevant part that "[i]f the damage, repairing or rebuilding resulting from any minor or substantial damage shall render the Premises untenantable, in whole or in part, for any period of time, ... [the Foundation] shall be entitled to abatement of Rent in an amount proportionate to the area within the Premises rendered untenantable by the damage." That provision continues and states that "[s]uch abatement shall continue until the date [Pheasant West] completes the repairs or rebuilding."

¶29 The parties agree that the historic storm and resulting flood triggered the Abatement of Rent provision in the lease. The only issue on appeal is whether the circuit court erred when it held that the Foundation could abate *all* of its rent during the relevant timeframe. Pheasant West places all of its eggs in the basket that, because only the first floor was flooded, the Foundation could only abate rent for that proportionate space. There is, however, a genuine dispute of material fact as to precisely when and what space was available for use by the Foundation.

¶30    The Foundation, noting the sparse attention paid to this issue in Pheasant West's briefing, contends that Pheasant West has not developed the argument sufficiently for it to be considered by this court.[6] *See **Techworks, LLC v. Wille***, 2009 WI App 101, ¶28, 318 Wis. 2d 488, 770 N.W.2d 727.  While that is technically correct, and while Pheasant West appears to treat this as a throw-away issue, this court will nonetheless address it in full.

¶31    It is the time between when the partial, conditional certificate of occupancy was issued (on September 7, 2018) and when the final, full occupancy approval was issued (on October 29, 2018) that is in question.  Pheasant West contends that the Foundation personnel could have walked up the "safe" stairways and used the upper floors despite the disrepair on the first floor and that floor's closed bathrooms.  The Foundation counters by asserting that there were no operating elevators, extensive construction was taking place on the first floor and in other stairwells, the parking lot had no painted lines or marked driving lanes, and its employees and guests could only reach the higher floors by traversing the dangerous first floor to walk up the stairs—the ones that were accessible—through a full construction site being used by Pheasant West and its contractor.  That, it contends, was not reasonable.

¶32    There can be no dispute that between the flood (on August 20-21, 2018) and September 7, 2018 (when the building inspector granted a partial, conditional certificate of occupancy for floors two through four, the lobby and some stairwells), the entire Building was rendered untenantable and rent abatement for

---

[6] The Foundation makes the same nondevelopment argument regarding the next issue with respect to the Abatement of Rent provision; that is addressed in the next section by this court.  Again, the court concurs that Pheasant West's arguments are thin, but they will still be addressed.

the entire Building was appropriate. There is no dispute that, by the terms of the lease, the Foundation was entitled to abate all of the Building's rent during that time period. *See* Lease, § 14.3. That part of the circuit court's order is affirmed.

¶33 There is also no dispute that there was extensive repair work being done to the entire first floor, some stairwells, and some of the elevators between the dates of the partial and full occupancy certificates. Pheasant West concedes that all of the repairs were not complete until that final, full occupancy approval on October 29. The lack of access to some of the stairwells could evidence just how untenantable the Building was during that construction phase. The building inspector's notes show that even on October 1, 2018—almost one month after the partial, conditional certificate of occupancy—the east side of the first floor was "ok" but did not include "electrical, doors and minor items." Also, while Pheasant West asserted that parts of the Building were available for use, it presented no evidence that the Foundation was actually using the parking lot or any of the floors in the Building while the construction was being undertaken.

¶34 "[E]videntiary facts set forth in the affidavits or other proof are taken as true … if not contradicted by opposing affidavits or other proof." *L.L.N. v. Clauder*, 209 Wis. 2d 674, 684, 563 N.W.2d 434 (1997). The affidavits and other proof must be viewed in the light most favorable to the responding party. *Lisa's Style Shop, Inc. v. Hagen Ins. Agency, Inc.*, 181 Wis. 2d 565, 570, n.3, 511 N.W.2d 849 (1994). Pheasant West disputed[7] the evidence presented by the Foundation with respect to the damage to the Premises and Building and that the Building was not

---

[7] It submitted an affidavit that details that the stairwells were accessible as of September 7, 2018, and the elevators were operational as of September 12, 2018. Pheasant West also asserts that the lobby was usable by or before September 7, 2018, and that it "was kept clear of any remediation efforts." Moreover, it averred that the upper floors were all "ready to use" on the partial occupancy date.

tenantable in some areas until the repairs from the flood damage were fully complete.

¶35 Whether or not the elevators were operational is disputed, as is the extent of the stairwells' accessibility. The parties dispute whether the first floor area was safe, particularly given ongoing electrical work. These issues have accessibility, compliance, safety, and functional implications which undoubtedly would impact tenantability. The factual disputes preclude summary judgment as it pertains to this short window of time between partial and full occupancy certificates. A factfinder—and not this court—must resolve this dispute of material facts.

¶36 The circuit court did not address these competing factual assertions. It merely found that full rent abatement was appropriate "while [the Foundation was] out of the building." That does not accurately reflect the plain language of the lease that provides that because of untenantability "in whole or in part, for any period of time" the Foundation is "entitled to abatement of Rent *in an amount proportionate to the area within the Premises rendered untenantable by the damage*." Lease, § 14.3 (emphasis added).

¶37 While we determine the circuit court was correct in concluding that the Foundation was entitled to rent abatement until repairs were completed and the Building—or portions thereof—was tenantable, it was error for the court to issue summary judgment when there were genuine disputes of material fact. Neither Pheasant West nor the Foundation has proven its right to summary judgment so clearly "as to leave no room for controversy." *See Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 566, 278 N.W.2d 857 (1979). We therefore reverse that ruling by the circuit court and remand the matter back to have a factfinder determine when and to what extent the Building was rendered tenantable in order to properly

assess how much rent the Foundation is entitled to abate for the time between the partial and full occupancy certificates.

### C. The Foundation adequately replaced its damaged property and Pheasant West's specific performance claim was properly dismissed.

¶38 For its final issue raised in its complaint, Pheasant West again relies upon the language in the Abatement of Rent provision of the lease. The final sentence of that provision states "[i]f [Pheasant West] is required … to repair the Premises under this Section 14, [the Foundation] shall repair or replace its stock-in-trade, trade fixtures, furniture, furnishings, equipment and personal property in a manner and to at least a condition equal to that prior to its damage or destruction." The circuit court addressed this point in the following declaration:

> Section 14.3 which requires replacement of the [Foundation's] stock-in-trade, furniture, trade fixtures, furnishings, equipment and personal property does not require an exact replacement. Instead it requires that whatever was done did not diminish the value of the building, and there is before the court no issue in that regard.

¶39 Pheasant West complains about three items of the Foundation's property; the Foundation had a valid rationale for each item's treatment and noted that, pursuant to the lease, it could have done each of the actions Pheasant West objects to in the ordinary course of business. First, the Foundation determined that it was prudent to move a sensitive data center to another location. Next, when a sublease tenant terminated its sublease after the flood, the Foundation decided not to replace office furniture and cubicles in that section of the Building. Finally, the Foundation, having previously decided to terminate its kitchen service at a first-floor cafeteria, decided not to replace certain kitchen equipment that was not in use

at the time of the flood. It did refinish the kitchen space with an automated cafeteria with a vending system.

¶40 Pointing out the inconsistency[8] in Pheasant West's arguments in this appeal, the Foundation argues that the language of the lease is clear and the circuit court made the correct interpretation based thereon. We agree.

## II. The circuit court was partially correct with respect to its rulings on the Foundation's counterclaims.

¶41 The Foundation raised two counterclaims based on Pheasant West's alleged breaches of the lease. The circuit court determined that Pheasant West had breached its lease by improperly refusing to timely return flood insurance premiums to the Foundation and awarded damages and attorneys' fees on that claim. It denied, however, the Foundation's counterclaim for return of the rent it had previously paid for August 2018. Both Pheasant West and the Foundation appeal on these issues.

¶42 With respect to the cross-appeal, we conclude that the circuit court erred in failing to require return of the August 2018 rent under the principles of rent abatement, and therefore reverse that portion of its decision. As noted, however, a factfinder must determine how much, if any, of the rent for the dates between the two occupancy certificates the Foundation is entitled to recover. The Foundation is also entitled to a hearing as to its reasonable attorneys' fees on that counterclaim alone because it is clearly entitled to some return of rent. The court correctly resolved the insurance premium counterclaim.

---

[8] Pheasant West previously argued that the Foundation's "tailored modifications" to the Building provided "no benefit" to it as landlord, but it now asserts that the failure to replace each of these items to its exact preflood condition damages Pheasant West and deprives it of a benefit.

## A. Pheasant West improperly charged insurance premium costs to the Foundation and failed to timely refund that cost.

¶43    In February 2019, Pheasant West provided the Foundation with an operating expense invoice pursuant to § 4.4 of the lease.  This invoice included a charge[9] for flood insurance (obtained after the historic storm).  The Foundation promptly paid this full invoice the next day.  The Foundation asserted that this premium was not reimbursable by the Foundation; the circuit court agreed and issued a declaration, on October 5, 2020, that "Section 13.6 ("Property Insurance by Landlord") of the lease does not require [Pheasant West] to maintain, at [its] expense (subject to reimbursement to the extent provided in Section 4) a property insurance policy insuring loss due to flooding."  Pheasant West did not appeal this declaration by the court.

¶44    On October 12, 2020, the Foundation advised Pheasant West that it had breached the lease by invoicing and collecting the insurance premium and demanded a refund with interest.  The terms of the lease require that the landlord must cure defaults within thirty days of notice of the same.  *See* Lease, § 17.3.  By the time the Foundation filed its amended counterclaim on November 16, 2020, Pheasant West had not reimbursed the Foundation; hence, the counterclaim. Pheasant West finally credited the Foundation for this expense on December 1, 2020.

---

[9]  The premium was in the amount of $12,412.66.

¶45 The circuit court awarded[10] the Foundation prejudgment interest on the flood insurance premium claim as well as reasonable attorneys' fees for this counterclaim pursuant to § 17.4[11] of the lease. Pheasant West appealed this decision, asserting it did not breach the lease. This court finds no merit in that aspect of this appeal. Because Pheasant West was not required to carry this type of insurance, it had no basis whatsoever under the lease to demand that the Foundation reimburse it for that cost. Pheasant West was required to return the insurance premium to the Foundation within thirty days of the Foundation's demand. For whatever reason, it decided to wait until December 1, 2020—fifty full days after the demand—to credit the Foundation for the improperly invoiced premium. Thus, Pheasant West breached the terms of the lease by its delayed reimbursement.

¶46 The circuit court's decision as to the reasonableness of attorneys' fees is entitled to deference "because the circuit court is familiar with local billing norms and will likely have witnessed first-hand the quality of the service rendered by counsel." *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58. Appellate courts "do not substitute our judgment for the judgment of the circuit court, but instead probe the court's explanation to determine if the court 'employ[ed] a logical rationale based on the appropriate legal principles and facts of record.'" *Id.* (alteration in original) (quoting *Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 987, 542 N.W.2d 148 (1996)). Pheasant West

---

[10] The circuit court awarded the Foundation $30.95 for the prejudgment interest together with $24,173.00 for reasonable attorneys' fees.

[11] Section 17.4 of the lease, entitled "Tenant's Remedies," provides that "[i]n the event of Landlord's Default, Tenant shall have the right to recover from Landlord actual and consequential damages incurred by Tenant due to Landlord's default, including reasonable attorneys' fees, and any other remedies at law or in equity which may be provided by a court of competent jurisdiction."

presents no arguments on any of these bases. Thus, we will not disturb the court's decision.

### B. Principles of rent abatement require that the Foundation be reimbursed for that portion of August rent corresponding to days when the Building was untenantable.

¶47 Finally, the Foundation argues that Pheasant West breached the lease by failing to refund the rent paid for an eleven-day period in August 2018 during which the Foundation was unable to come onto the Premises to use the Building and that the circuit court erroneously exercised its discretion by failing to require this additional rent abatement. The Foundation seeks not only the return of its rent, but an award of its attorneys' fees for all of its counterclaims. Pheasant West disagrees. This court concludes that the circuit court did not properly apply the law with respect to rent abatement.

¶48 Initially, the circuit court declared that "Section 14.3 ('Abatement of Rent') of the lease allows [the Foundation] to abate rent in full beginning August 21, 20[18] and continuing thereafter through October 29, 2018." However, when the court was subsequently asked to determine if the Foundation was entitled to a refund of a portion of the rent[12] it had already paid for August 2018, the court reassessed that decision. Even though it concluded that rent abatement covered all the relevant days in August, the court considered that rent had already been paid and then asked: "What does abatement mean under these circumstances[?] Does it require the landlord to do something or does it require the tenant to do something[?]"

---

[12] The Foundation had paid August 2018, rent, but then abated the rent until it was able to occupy the Building after the full, final occupancy certificate. The circuit court allowed for that aspect of rent abatement, so those months are not in dispute here.

¶49   The circuit court continued, distinguishing between a tenant right and a landlord obligation:

> I'm satisfied in reading the lease and reading the definition of abatement that I found abatement is the tenant's right. The tenant takes action on abatement. In reading the definitions and putting it in the context of the lease and what happened in this case, I'm satisfied the tenant has the ability to abate the rent and that would be in this case to hold back rent for future payments to pick up the $61,000.
>
> ….
>
> I'm satisfied even though the Foundation may have given notice about the repayment or refund of the rent, that it's not an obligation. It's not a default of the landlord to fail to pay the rent back under the terms of the lease. The abatement is a tenant right. It's not a landlord obligation to take action based upon the circumstances in this case.

¶50   In essence, the circuit court determined that the Foundation could "abate" rent under a "self-help" remedy by withholding that amount from future rent payments (even after the premises were tenantable). That, however, is in direct contravention of § 3.1 that prohibits such actions: "Tenant shall pay to Landlord, without notice and demand, and *without any deduction, offset or abatement* except as specifically provided in this Lease …." (Emphasis added). The Foundation contends that if it tried or tries to abate rent in future payments, it may be subject to a claim[13] that it is violating its lease terms and may owe Pheasant West for that breach.

¶51   The circuit court's separation of rent owed and rent already paid is belied by case law in Wisconsin and other jurisdictions. First, in ***Boelter v. Tschantz***, 2010 WI App 18, ¶¶20-22, 323 Wis. 2d 208, 779 N.W.2d 467 (2009), the

---

[13] That leaves the Foundation mired in a literal Catch-22: It has a right to rent abatement but because it already paid the rent, it cannot recover its money, and Pheasant West has no right to the rent paid but it has no obligation to return the rent already paid.

court made no distinction between rent already paid and rent owed when it determined that rent abatement was appropriate. In fact, the tenancy had already expired when the claim for rent abatement was brought and that did not bar the court from concluding that the tenant was entitled to rent abatement and in remanding the matter to determine how far back the abatement was applicable. And, albeit in a case from another jurisdiction, another court held that a "[l]essee did not waive its right to abatement by making the lease payments and bringing an action for the return of the payments it claimed were abated." *D.E. Props. Corp. v. Food for Less, Inc.*, 859 S.W.2d 197, 201 (Mo. Ct. App. 1993).

¶52     Accordingly, Pheasant West is required to return the overpayment of rent, as determined on remand, together with interest from May 31, 2019.[14] The circuit court's decision that Pheasant West is not obligated to do so, and that Pheasant West did not breach the lease by failing to do so for over three years, is an incorrect application of the law. The undisputed facts show that Pheasant West breached the lease by failing to refund the overpayment to the Foundation. The circuit court's decision to the contrary is hereby reversed.

### C. The Foundation, on remand, is potentially entitled to an additional award of attorneys' fees on the issue of rent abatement as allowed by the lease.

¶53     Based upon this court's conclusion that Pheasant West breached its lease by failing to reimburse the Foundation for rent during which the Building was untenantable and pursuant to the remedies provided to the Foundation under the

---

[14] May 31, 2019, is the date the Foundation filed its initial counterclaim and demand for partial return of its August 2018 rent payment pursuant to the lease's rent abatement provisions.

lease (§ 17.4), the Foundation is potentially entitled to an award of its reasonable attorneys' fees as allowed by the lease[15] with respect to litigation on the issue of Pheasant West's failure to refund money for the overpayment. Accordingly, we remand this to the circuit court for an evidentiary hearing on this issue. *See, e.g.*, ***Three & One Co. v. Geilfuss***, 178 Wis. 2d 400, 415, 504 N.W.2d 393 (Ct. App. 1993).

## CONCLUSION

¶54 Based upon the foregoing, this court concludes that the circuit court appropriately granted summary judgment denying two of Pheasant West's breach of contract claims, erred in granting summary judgment on the question of the tenantability of the Building with respect to the appropriate amount of rent to be abated, and appropriately granted the Foundation summary judgment on one of its counterclaims together with related attorneys' fees. We remand the matter back to have a factfinder determine when and to what extent the Building was rendered tenantable in order to properly assess how much rent the Foundation is entitled to recover for the time between the partial and full occupancy certificates. With respect to the cross-appeal, because of an incorrect application of the law by the circuit court with respect to rent abatement and additional attorneys' fees, we reverse and remand this matter for determination of the proper amount of rent abatement owed by Pheasant West, with interest, to the Foundation as noted.

---

[15] Pheasant West correctly notes that, pursuant to § 17.4 of the lease, it is only responsible for attorneys' fees if they are proven to be actual damages consequential to a Landlord Default; it is still necessary for the Foundation to prove this in order to recover the fees.

¶55     We further remand this matter to the circuit court to determine the appropriate award of the attorneys' fees, if any, as allowed by the lease with respect to the landlord's default on the rent abatement counterclaim.

¶56     We decline to order costs to either party.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions; cross-appeal reversed and cause remanded with directions.