COURT OF APPEALS
DECISION
DATED AND FILED

February 27, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP100**

STATE OF WISCONSIN

Cir. Ct. No. **2024CV258**

IN COURT OF APPEALS
DISTRICT IV

BRITTANY BAY CLUB CONDOMINIUM
OWNERS ASSOCIATION, INC.,

    PLAINTIFF-RESPONDENT,

V.

JAMES R. TRAUGOTT,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dodge County: MARTIN J. DE VRIES, Judge. *Affirmed*.

Before Graham, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  James Traugott appeals a circuit court order that granted summary judgment in favor of the Brittany Bay Club Condominium Owners Association (the "Association") on its claims for a money judgment and a judgment of foreclosure based on Traugott's failure to pay a condominium assessment related to the replacement of a pier.  On appeal, Traugott argues that he is not liable for the assessment—primarily because the Association did not include the pier replacement expenses in Brittany Bay's annual budget, and also because the Association failed to comply with the special meetings and voting provisions in Brittany Bay's bylaws and declaration.  We reject these arguments and affirm.

## BACKGROUND

¶2    The following facts, which are undisputed, are derived from the pleadings, affidavits, and other summary judgment materials.

¶3    Brittany Bay is a multi-unit condominium property located in Dodge County, Wisconsin.  Traugott owns a unit at Brittany Bay.

¶4    The Association is a condominium association that was organized under the Wisconsin Condominium Ownership Act.  *See* WIS. STAT. § 703.15 (2023-24).[1]  The Association is charged with governing Brittany Bay's affairs consistent with its declaration of condominium ownership ("the declaration") and bylaws.  *See* WIS. STAT. §§ 703.09-.10.  Each Brittany Bay unit owner is a member of the Association and has the right to vote on certain decisions that the Association makes, with the owners of a unit being entitled to a single vote.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶5    The Association elects a Board of Directors ("the Board") that is responsible for, among other things, managing, maintaining, repairing, and replacing the "common elements" at Brittany Bay. "Common elements" are all places and structures on Brittany Bay's property aside from the units, and the common elements are owned collectively by the unit owners. The Board has the power to "[l]evy and collect" assessments to pay costs associated with the common elements, but in some circumstances, the declaration requires a two-thirds vote of approval from unit owners before the Board can authorize certain additions and improvements.

¶6    As noted, the dispute here is over an assessment for the replacement of a pier, which is one of the common elements at Brittany Bay. The Association held a special meeting in September 2021 to discuss certain items of "[b]usiness," including the condominium's annual budget for 2022 and the pier replacement project. As we discuss in more detail below, a meeting agenda provided that the annual budget and the pier replacement project would both be discussed at the special meeting. Traugott takes issue with the content of this agenda as insufficiently specific, but he does not dispute that this agenda was distributed to unit owners prior to the meeting.

¶7    The September 2021 meeting was memorialized in minutes. Regarding the 2022 annual budget, the minutes reflect that the treasurer gave a report about the budget and that a motion to approve the budget was made and seconded. Although not explicitly stated in the minutes, the parties agree that the budget was approved at that meeting, and that the budget did not incorporate the costs associated with the pier replacement project.

¶8    With respect to the pier replacement project, the meeting minutes reflect the following discussion:

> Pier Replacement: Jason B. gave update on pier construction. Jimmy at Lake Country Recreation gave Jason a $47,000 quote, good until September 30th, 2021. Oxbow Marine is forwarding a quote hopefully the day of the Community Fall Meeting. Jason will need to obtain a third quote. The unit owners shared and made suggestions to replace piers.

A motion to replace the piers was made and seconded. Although the minutes reflect that the motion was unanimously approved by all of the unit owners who voted on the motion,[2] the record does not reflect the total number of units at Brittany Bay or the number of units that were represented at the meeting; therefore, the percentage of unit owners who voted to approve the project cannot be readily calculated based on the summary judgment record. It is undisputed that Traugott was not present at the meeting and did not participate in the vote.

¶9    Following the vote at the September 2021 special meeting, the Board imposed a special assessment of $1,200 per unit for the pier replacement. It is undisputed that Traugott did not pay the special assessment.

¶10    The Association filed a lien on Traugott's unit pursuant to WIS. STAT. § 703.165(3). It also filed a complaint seeking a money judgment for the unpaid assessment and other charges, as well as a judgment of foreclosure on the condominium lien.[3] In his answer, Traugott denied that he was liable for the

---

[2] The meeting minutes reflect that there were 23 attendees, with "proxies collected" for two individuals not in attendance.

[3] The Association's complaint also included a harassment claim and requested a temporary restraining order against Traugott. The parties do not raise any arguments about this claim on appeal, and we discuss it no further.

4

unpaid assessment.[4]   Ultimately, Traugott argued that the process that the Association used to approve the assessment did not comply with certain requirements imposed by Wisconsin statutes and the condominium's declaration and bylaws, and that by failing to comply with those provisions, the Association "forfeited the legal authority" to fund the pier replacement.  The Association moved for summary judgment on both of its claims.

¶11    Following a hearing where both sides presented argument, the circuit court granted summary judgment in favor of the Association.  Traugott appeals.[5]

## DISCUSSION

¶12    We independently review an order granting a motion for summary judgment, "employing the same methodology as the circuit court."  *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  WIS. STAT. § 802.08(2).

---

[4]  Traugott also filed a counterclaim, but the factual and legal bases for that counterclaim are unclear.  Traugott does not make any argument about a counterclaim on appeal; accordingly, we discuss it no further.

[5]  In its respondent's brief, the Association cites to the appendices to the briefs without including parallel citations to the appellate record.  We remind counsel of the obligation to follow the rules of appellate briefing in WIS. STAT. ch. 809.  *See* WIS. STAT. § 809.19(1)(d)-(e) (providing that briefs must contain "appropriate references to the record" and "citations to the … parts of the record relied on"); *Balsimo v. Venture One Stop, Inc.*, 2024 WI App 58, ¶4 n.2, 414 Wis. 2d 27, 13 N.W.3d 228 (providing that "the appendix is not the record").

¶13    In Wisconsin, condominiums are subject to the Condominium Ownership Act found in WIS. STAT. ch. 703.  That act provides that each condominium shall adopt a declaration, WIS. STAT. § 703.09, and bylaws to govern its "administration," *see* WIS. STAT. § 703.10, and that "the affairs of every condominium shall be governed by an association," *see* WIS. STAT. § 703.15(1).

¶14    A condominium association must adopt an annual budget, and it has the power to levy and collect regular and special assessments for common expenses from unit owners.  WIS. STAT. §§ 703.15(3)(a), 703.161(2), 703.165.  Unit owners are "liable for all assessments … coming due while owning a unit, including any assessments coming due during the pendency of any claim by the unit owner."  § 703.165(2).  In the event that a unit owner fails to pay an assessment as it comes due, an association may obtain a money judgment, *see* WIS. STAT. § 703.25(3), and, ultimately, a lien on the unit, allowing the association to foreclose pursuant to the process in § 703.165.

¶15    Here, it is undisputed that Traugott owns a unit at Brittany Bay and that he did not pay the pier assessment on which the money judgment and judgment of foreclosure are based.  Traugott argues that the association is not entitled to the judgments as a matter of law because, he claims, the Association did not use a proper process to levy the assessment.  As best we understand, the crux of his argument is that the Association forfeited its ability to collect on the assessment on that basis.

¶16    We reject Traugott's argument.  As noted, unit owners are "liable" by statute "for all assessments" that come due when they own a unit, "including any assessments coming due *during the pendency of any claim by the unit owner*."  *See* WIS. STAT. § 703.165(2) (emphasis added).  Traugott does not cite any law

that would support an argument that the Association forfeited the right to collect the assessment based on the process it used, nor does he cite any law that would allow him to withhold payment of the assessment while any process-based claims against the Association are resolved.[6]  We could reject Traugott's argument on that basis alone.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

¶17     Nevertheless, for completeness, we go on to address the merits of the process-based arguments that Traugott makes.  He argues that the Association was required to include the pier replacement expenses in Brittany Bay's annual budget.  Alternatively, he argues that if the expenses could be the subject of a special assessment, the Association failed to comply with provisions in the declaration and bylaws concerning "special meetings" and "voting."   We address these arguments in turn.

## I.  WISCONSIN STAT. § 703.161(2) and the Annual Budget

¶18     WISCONSIN STAT. § 703.161(2) requires condominium associations to "adopt and distribute to all unit owners an annual budget."  The annual budget must "set[] forth," among other things, "[a]ll anticipated common expenses" and the "aggregate amount of any assessment to be levied against unit owners and the purpose of that assessment."  *See* § 703.161(2)(a), (f).

---

[6] WISCONSIN STAT. § 703.245 provides a process for unit owners to bring claims against condominium associations, which can be based on "any applicable provisions of the condominium instruments, bylaws, rules, or other documents relating to the condominium or association."  *See* § 703.245(3)(b).

¶19    Here, it is undisputed that the pier replacement expense was not included in the 2022 annual budget, nor did the budget include an aggregate amount to be levied against unit owners with respect to that project.  Traugott argues that this was error on the Association's part.  He points out that by the time the annual budget was adopted, the Association had a bid of $47,000; therefore, he asserts, "the approximate cost" of replacing the pier was "known."  Under these circumstances, Traugott argues that the common expense for replacing the pier was "anticipated" and that the Association was required by WIS. STAT. § 703.161(2) to include the expense and the aggregate amount of the assessment in the annual budget.  We reject Traugott's argument for two reasons.

¶20    First, we are not persuaded that the pier replacement was an "anticipated common expense" within the meaning of WIS. STAT. § 703.161(2).  Although the Association knew it wanted to repair the pier at the time that the annual budget was adopted and had some information about how much a replacement project might cost, the record demonstrates that the Association was still in the midst of planning and had not nailed down critical details.  Such details included who would be doing the project, the timeline for completion, how much the project would cost, and, ultimately, how much each unit owner would have to pay toward that common expense.

¶21    Reading WIS. STAT. § 703.161(2) in the context of its various subsections, it is evident that one reason that "anticipated common expenses" must be included in the budget is to inform unit owners of their individual liability for those expenses.  *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole").  Here, given the uncertainty surrounding the cost and timeline of the pier replacement, it would

have been difficult for the Association to "adopt and distribute" an annual budget that reflected those expenses and the owner assessments. *See* § 703.161(2). Under these circumstances, we are not persuaded that this was the type of expense that the statute contemplates as being required to be included in the annual budget.

¶22  Second, even if we were to assume that the Association should have included the cost of replacing the pier in the annual budget, Traugott fails to explain how the Association's failure to do so is material to his liability for the assessment. *See **Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC***, 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767 ("[a] 'material fact' is one that is 'of consequence to the merits of the litigation'" (citation omitted)).  As noted, WIS. STAT. § 703.161(2) provides that owners are liable for assessments as they come due, and Traugott points to no language—statutory or otherwise—that provides that a condominium association is prohibited from collecting assessments unless done through the annual budget process.

¶23  In fact, the bylaws of Brittany Bay—which control "[t]he manner of assessing against and collecting from unit owners their respective shares of the common expenses," *see* WIS. STAT. § 703.10(2)(e)—expressly provide otherwise. That is, the bylaws explicitly authorize the Board to collect assessments *outside of* the annual budget process.  Such assessments are known as "special assessments," which the Board may levy from "time to time … for any purpose enumerated in the [d]eclaration," including "replacing … the [c]ommon [e]lements." *See* Brittany Bay Bylaw § 10.02-10.04; Brittany Bay Declaration § 6.08(j).

¶24  Accordingly, we reject Traugott's argument that he is not liable for the assessment because it was not included in the annual budget for 2022.

**II. Provisions in the Governing Documents**

¶25    We now turn to Traugott's arguments about the provisions in Brittany Bay's governing documents. As noted, the administration and affairs of a Wisconsin condominium are governed by a declaration and bylaws, which all Wisconsin condominiums must adopt. *See* WIS. STAT. §§ 703.07, 703.09-.10. Among other things, condominium declarations and bylaws create rules that control when a condominium association and its board of directors may levy and collect assessments from unit owners. *See* § 703.09-.10.

¶26    Traugott argues that here, the Association, and particularly its Board, failed to comply with two provisions: a "special meetings" provision found in the bylaws and a voting provision found in the declaration. Again, as we best understand, Traugott's argument is that the Association forfeited the ability to impose and collect the pier assessment by failing to comply with these provisions. For reasons we now explain, we reject Traugott's arguments.

**A. The Special Meetings Provision in the Bylaws**

¶27    Section 3.03 of Brittany Bay's bylaws provides that "[b]usiness transacted at special meetings shall be limited to the objects stated in the notice of such meetings." Traugott argues that the September 2021 meeting at which the Association voted to approve the pier replacement project was a "special meeting," and that the agenda distributed prior to the meeting failed to adequately identify the business that would be transacted at that meeting. He argues that the lack of specificity in the agenda was a violation of § 3.03.

¶28    Here, the agenda for the September 2021 meeting provided that one of the items of business that would be addressed at the meeting was "Pier

10

construction," but it did not explicitly include "notice of a proposed vote on purchase of the dock system." Traugott seems to be arguing that, although the agenda notified unit owners that pier replacement would be discussed at the meeting, the agenda was inadequate because it did not provide explicit notice that the discussion would culminate in a vote. But Traugott does not explain, nor do we see, why the agenda had to be more specific to comply with § 3.03. All that § 3.03 requires is that the "[b]usiness transacted" at special meetings be limited to what was specified "in the notice." *See* ***Kaitlin Woods Condo. Ass'n, Inc. v. North Shore Bank, FSB***, 2013 WI App 146, ¶¶8-10, 352 Wis. 2d 1, 841 N.W.2d 562 (relying on the "plain language" of a condominium document to interpret its meaning). Here, the "[b]usiness transacted" at the meeting was about pier construction, and the agenda distributed to unit owners prior to the meeting specified that business. Traugott does not point to any language in the statutes, bylaws, or declaration that provides that more was required, or that the Association's ability to impose an assessment turns on it providing explicit notice that a vote will be taken. We reject Traugott's argument about the bylaws on that basis. *See* ***Pettit***, 171 Wis. 2d at 646-47.

### B. The Voting Provision in the Declaration

¶29 Traugott also argues that the Association and the Board failed to comply with § 6.08(j) of the declaration. That section concerns the circumstances in which the Board must obtain a two-thirds vote prior to authorizing certain "capital additions and improvements."

¶30 More specifically, the declaration makes the Board responsible for "repair, alteration and improvement" of the common elements and provides that unit owners shall pay their proportionate share of the expenses of replacement of

the common elements. *See* § 5.04. The declaration further provides that the Board's "powers" to fulfill its duties in this regard are "limited" by § 6.08(j), which provides in full:

> Capital Additions and Improvements: The Board's powers hereinabove enumerated, shall be limited to the extent that [1] the Board shall have no authority to acquire or provide or pay for out of the maintenance fund any capital additions and improvements (other than for purposes of replacing or restoring portions of the Common Elements subject to all the provisions of this Declaration) having a total cost in excess of ten thousand dollars ($10,000), [2] nor shall the Board authorize any structural alterations, capital additions to, or capital improvements of the Common Elements requiring an expenditure in excess of ten thousand dollars ($10,000), without in each case the prior approval of the Voting Members holding two-thirds (2/3) of the total votes.

The parties dispute the interpretation of § 6.08(j)—specifically, whether § 6.08(j) required that the Board obtain the approval of the owners of two-thirds of the units before imposing the pier replacement assessment. And, although the arguments are less clear on this point, the parties may also be disputing whether the Board did in fact obtain that two-thirds vote.

¶31 As for the interpretation of § 6.08(j), the parties agree that the pier replacement involved an expenditure that was "in excess of ten thousand dollars," but, as noted, they disagree whether the Board was required to obtain a two-thirds vote from the unit owners. The Association focuses on the first half of the provision, and it argues that § 6.08(j) "does not apply to maintenance, repair or replacement of common elements" and does not require a two-thirds vote when the Board is "replacing or restoring" a common element. Traugott focuses on the second part of the provision and argues that prior approval of two-thirds of the Association is required because the replacement of the pier was a "capital addition fixed asset."

12

¶32    We interpret a condominium declaration using the same rules that are used to interpret contracts. *Solowicz v. Forward Geneva Nat., LLC*, 2010 WI 20, ¶34, 323 Wis. 2d 556, 780 N.W.2d 111. Here, the text of the voting provision is not a model of clarity, and both parties can find support for their positions in its language. That is, the first part of the provision appears to exempt funds used to replace common elements (but perhaps only if the funds are paid out of the maintenance fund, which the parties do not address here), and the second half of the provision could be read as independently requiring a vote to approve capital additions, which does not appear to be a defined term, and which may or may not include the replacement of existing features. Therefore, the text appears to be reasonably susceptible to multiple meanings, and the parties do not provide any evidence that would allow that ambiguity to be resolved on summary judgment.

¶33    Thus, for the purposes of this appeal, we assume that the Association was required to obtain a two-thirds vote prior to imposing the pier assessment. We also assume that the Association did not obtain the approval of the owners of two-thirds of the units prior to imposing the pier assessment—but this later assumption is on more tenuous ground. The Association's respondents' brief asserts that the Association "obtained the required votes" "if [a two-thirds] vote were required," and Traugott does not address, much less attempt to counter, that assertion in his reply brief. However, as noted above, evidentiary items that would support a determination about the percentage of unit owners who voted in favor of the project are missing from the summary judgment record. *See supra* ¶8.

¶34    But even if we make these assumptions in Traugott's favor, we conclude that Traugott has not presented a material dispute as to his liability for the assessment. As noted, a unit owner is "liable for all assessments … coming due while owning a unit, including any assessments coming due during the

13

pendency of any claim by the unit owner against the association," WIS. STAT. § 703.165(2), and Traugott has not cited any law that would support an argument that the Association forfeited the right to collect the assessment based on the process it used, or that would allow him to withhold payment of the assessment while any process-based claims against the Association are resolved. *Pettit*, 171 Wis. 2d at 646-47. Accordingly, even if Traugott had reason to dispute the Association's authority to impose the pier assessment based on § 6.08(j), he has not shown that he was permitted to withhold the assessment while he challenged its validity.

## CONCLUSION

¶35 For the reasons stated above, we reject Traugott's arguments and affirm the circuit court's grant of summary judgment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.